**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **JULY SIMEONA**, Defendant–Appellant

NO. 15684

(CITATION NOS. 4542H/4543H)

DECEMBER 17, 1993
Amended Opinion Replacing Original Opinion
Filed on July 13, 1993 Pursuant to Order Granting
Reconsideration Filed on July 30, 1993

BURNS, C.J., WATANABE, J., AND CIRCUIT
JUDGE YIM, IN PLACE OF HEEN, J., RECUSED

AMENDED OPINION OF THE COURT
BY BURNS, C.J.

On February 12, 1991 and February 19, 1991, defendant July Simeona (Simeona) was cited by the State of

Hawai'i (the State) for storing his cabin motorboat at the dry storage area of Honokohau Harbor in Kona, Hawai'i, in violation of § 19–62–17(a)(1) of the Hawai'i Administrative Rules Governing Operation of Boats, Small Boat Harbors, and Permits of the State of Hawai'i's Department of Transportation (1981) (Rule 19–62–17(a)(1)).

Rule § 19–62–17(a)(1) states as follows:

> *Mooring prohibited except at assigned locations.* (a) A vessel shall not be moored, anchored, or stored:
>
> (1) At a berth or space other than that to which it was properly assigned.

Hawai'i Revised Statutes (HRS) § 266–25 (Supp. 1992) provides in relevant part as follows:

> *Violation of rules; penalty.* Any person who violates any rule made, adopted, and published by the department of transportation as herein provided, or who violates any lawful command of any harbor master, harbor agent, or harbor district manager, while in the discharge of the person's duty, or who violates this chapter, shall be fined not more than $10,000 for each offense, and any vessel, the agents, owner, or crew of which violate the rules of the department or this chapter, shall be fined not more than $10,000 for each violation; provided that in addition to or as a condition to the suspension of the fines and penalties, the court may deprive the offender of the privilege of operating or mooring any vessel in state waters for a period of not more than two years.

Simeona appeals the district court's September 26, 1991 judgment finding him guilty and imposing a fine of $25 for each of the two offenses. Execution of the fine was

stayed pending appeal. Simeona contends, *inter alia*, that the district court unlawfully denied him his constitutional right to a jury trial. Based on Hawai'i's constitution, we agree. Accordingly, we vacate the September 26, 1991 judgment and remand for a jury trial.

## FACTS

On May 17, 1991, Simeona filed a Motion Compelling Discovery alleging that he owns an undivided interest in the Ahupua'a (a parcel of land usually extending from the uplands to the sea) of Honokohau and seeking discovery of "any and all titles, deeds, and other documents or conveyances of properties, establishing valid ownership of said Honokohau, small boat harbor, and its surrounding premises." Simeona's motion stated that it was made "pursuant to Rule 37(a) H.R.C.P."

At the June 14, 1991 hearing, Simeona explained his motivation for his actions.

THE DEFENDANT:  . . . I've been issued fines for parking at the marina. Certainly, I will pay the fines if you can show me whoever [sic] the State is involved — to show me that they are the legal owners of those properties.

\* \* \*

THE DEFENDANT:  . . . I was told by my family that we own the property. . . .

So, I shipped my boat up here and parked it there hoping that I'd be arrested to determine once and for all who owns that property — whether the State owns it or whether [if] they bought it from Greenwell whether it was a proper or lawful deed. This is my objective.

\* \* \*

THE COURT: So you deliberately violated this law so that you could bring it to Court and try the title to the land?

THE DEFENDANT: Well, in a sense, yes. . . .

* * *

· THE COURT: This is a rather strange way to quiet title of your property, Mr. Simeona.

* * *

THE DEFENDANT: But I understand that the procedures for getting your property heard in court — it takes maybe five to six years under our system. So, in order to proceed in the process I thought maybe it would be constructive to bring this to Court at a speedier method.

The State admitted that it had received Simeona's discovery request but stated that it "declined to provide such documentation on the grounds that it's irrelevant." Thereafter, the following conversation occurred:

THE DEFENDANT: Again, I'd like to get an answer from the prosecutor why didn't they comply with the request as far as ownership?

THE COURT: Well, they didn't feel that it was a relevant issue. But after you told me what you want to attempt to establish, I think it's relevant so I've ordered them to provide that discovery to you.

Simeona also requested a jury trial but his request was denied as follows:

THE COURT: Are you ready to proceed with the trial in this matter, Mr. Simeona?

THE DEFENDANT: . . . I would like to ask the Court that I be granted a jury trial.

THE COURT: Any response from the State?

[DEPUTY PROSECUTOR]: . . . Your Honor, I'm sorry I don't have the — I only have one section of the rules and I don't recall if this is a full misdemeanor or not. And —

THE COURT: According to my bail schedule, the maximum penalty for storing without permission is a fine of $100.00.

[DEPUTY PROSECUTOR]: That's probably correct, your Honor. I would submit that that's correct. So, we would argue that the defendant has no right to a jury trial.

\* \* \*

THE COURT: I will deny your request for a jury trial. You're not entitled to a jury trial because the maximum penalty for this offense is a fine of $100.00. There is no possibility of imprisonment.

\* \* \*

THE COURT: Let me correct one thing. Under Section 266–25, a violation of a rule published and adopted and made by the Department of Transportation is subject to a maximum fine of $10,000.00. . . .

At the August 22, 1991 hearing, immediately prior to the commencement of the trial, the court stated to Simeona in relevant part as follows:

THE COURT: We are not trying a title here, Mr. Simeona.

\* \* \*

THE COURT: You can sue the State of Hawai['] i if you want. There is no problem with that. You can file a suit in whatever court you

want to file, but this is a Harbors Division cita-
tion. You have raised the defense that the Harbors
Division doesn't have jurisdiction or doesn't have
the power to enforce its rules and regulations over
the area that you had your boat parked on and
I'm not going to determine who is the owner or I'm
not trying a dispute between yourself and the
State of Hawai['i]i as far as ownership of the prop-
erty. And this is not a suit against the State of
Hawai['i]i.

* * *

At the first day of trial on August 22, 1991, the State
introduced evidence that the dry storage area in question
is controlled by the State's Department of Transportation
Harbors Division and is included within the 696.3–acre
parcel covered by Tax Map Key 3–7–4–8–3. It also intro-
duced evidence that the county real property tax records
show that the State is the owner of that parcel.

Thereafter, the trial continued as follows:

THE COURT: . . . What evidence do you
have to contradict this?

And as I understand your earlier statements
and your statements today you don't have that.
You have your statement from a gene[a]logist that
your family was born and raised there and from
that you derive an ownership interest in the prop-
erty, but other than that you don't have evidence
and now you are asking for more time to produce
evidence and what I'm afraid of is that you are
going to file some sort of paper claiming owner-
ship in the property and that will be your evidence
and . . . that's not going to be sufficient for this
court.

\* \* \*

THE COURT: ...

This is the proper venue and this is the proper jurisdiction for this case now, so if you can demonstrate to me that there is a significant probability that you will [be] able to produce evidence and that you have not been able to find that evidence before today's date I will consider your request to continue, otherwise we can proceed to disposition. . . .

\* \* \*

THE COURT: What I would rather do, Mr. Simeona, unless you have any further evidence I will proceed to disposition, make a finding and I will allow you time to come back to court and I will look at whatever documents you have at that time and I will see if I would reconsider my decision.

\* \* \*

At the September 26, 1991 continuation of the trial, Simeona introduced into evidence a copy of a May 4, 1898 deed in Hawaiian from J. W. Kalua and his wife P. Kalua to Mrs. E. C. Greenwell. The signatures were notarized in English. Simeona had the following to say about the 1898 deed:

MR. SIMEONA: ...

Your Honor, this is a deed from my great–grandfather to Greenwell.

THE COURT: Have the Clerk mark it.

MR. SIMEONA: I will stipulate for the Court that I have ironclad evidence that that deed is a forgery which you folks should consider —

perhaps talk to the people who made the deed out, but I can prove in Court that that deed is a forgery.

\* \* \*

In his appeal, Simeona challenges (1) the denial of his demand for a jury trial; (2) the denial of his District Court Rules of Civil Procedure Rule 37(a) Motion Compelling Discovery; (3) the court's allowing the State to prove its right to control the premises in question by introducing a certified statement signed by the County Tax Administrator rather than by introducing a deed; and (4) the "repeated denial to defendant[']s rights of access to his case dockett [sic] (public record) and withholding/or denying defendant of evidence submitted (certified statement, exh. 1)[.]" We will discuss Simeona's points on appeal in order.

## DISCUSSION

### 1.

The Sixth Amendment of the United States Constitution states in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law[.]" Article 1, Section 14, of the Hawai'i Constitution is similarly worded.

Article III, Section 2, of the United States Constitution states in relevant part that "The Trial of all Crimes, except in cases of impeachment, shall be by Jury[.]"

Simeona contends that he was denied his constitutional right to a jury trial. We agree.

## A.

The initial question is whether the proceeding was a "criminal prosecution." If it was not a criminal prosecution, Simeona was not entitled to a trial by jury. In answering this initial question, we must determine whether the penalties authorized by HRS § 266–25 are criminal penalties or civil penalties. If they are civil penalties, then the constitutional protections afforded to a criminal defendant, including the right to a jury trial, were not triggered. *United States v. Ward*, 448 U.S. 242, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980). Since we are dealing with the constitutional right to a jury trial, we resolve doubt in favor of the person. We conclude that the penalties authorized by HRS § 266–25 are criminal penalties for a penal offense.

[T]he question whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction. *See, e.g., One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 237 [, 93 S. Ct. 489, 493, 34 L. Ed. 2d. 438] (1972); *Helvering v. Mitchell*, [303 U.S. 391, 399, 58 S. Ct. 630, 633, 82 L. Ed. 917 (1938)]. Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. *See One Lot Emerald Cut Stones v. United States*, *supra*, [409 U.S.] at 236–237 [, 93 S. Ct. at 492–93]. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme

was so punitive either in purpose or effect as to negate that intention. *See* ***Flemming v. Nestor***, 363 U.S. 603, 617–621 [, 80 S. Ct. 1367, 1376–78, 4 L. Ed. 2d 1435] (1960). In regard to this latter inquiry, we have noted that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." *Id.*, at 617 [, 80 S. Ct. at 1376]. *See also* ***One Lot Emerald Cut Stones v. United States***, *supra*, [409 U.S.] at 237 [, 93 S. Ct. 493]; ***Rex Trailer Co. v. United States***, 350 U.S. 148, 154 [, 76 S. Ct. 219, 222, 100 L. Ed. 149] (1956).

448 U.S. at 248–49, 100 S. Ct. at 2641, 65 L. Ed. 2d at 749 (1980).

Thus, we must determine whether Hawai'i's statutes indicate a preference for classifying the penalties authorized by HRS § 266–25 as criminal or civil. We conclude that they indicate a preference for classifying them as criminal.

In Hawai'i, the legislature has classified three grades of crimes: felonies (maximum imprisonment in excess of one year); misdemeanors (maximum imprisonment of one year); and petty misdemeanors (maximum imprisonment of less than one year). HRS § 701–107 (1985 and Supp. 1992).

In contrast, a violation is defined by HRS § 701–107(5) (1985) as follows:

An offense defined by this Code or by any other statute of this State constitutes a violation if it is so designated in this Code or in the law defining the offense or if no other sentence than a fine, or fine and forfeiture or other civil penalty, is

authorized upon conviction or if it is defined by a statute other than this Code which provides that the offense shall not constitute a crime. A violation does not constitute a crime, and conviction of a violation shall not give rise to any civil disability based on conviction of a criminal offense.

The commentary to HRS § 701–107(5) states as follows:

Subsection (5) creates a class of non–criminal offenses, called violations. No imprisonment may follow conviction of a violation, nor may any civil disabilities be imposed. Classification as a violation would be appropriate for many sumptuary offenses and other offenses of strict liability.

The legislature's declaration that a violation is non–criminal and does not constitute a crime does not compel the conclusion that the penalties for conviction of a violation are civil rather than criminal. We conclude that although a violation does not constitute a crime, it constitutes a penal offense, and the legislature intended its penalties to be criminal penalties. With respect to HRS § 266–25, we have three reasons for this conclusion.

First, the Uniform Act on Status of Convicted Persons, which Hawaiʻi has adopted in HRS Chapter 831, recognizes that there are "penal offense[s]" for which no jail sentence may be imposed and that the records of these penal offenses are "criminal records." HRS § 831–3.1(b)(3) (Supp. 1992), states as follows:

(b) The following criminal records shall not be used, distributed, or disseminated by the State or any of its political subdivisions or agencies in connection with an application for any said

employment, permit, license, registration, or certificate:

\* \* \*

(3) Convictions of a penal offense for which no jail sentence may be imposed[.]

Second, no statute describes its penalties as civil penalties.

Third, HRS § 266–24 (Supp. 1992) vests in the state director of transportation and subordinates the powers of police officers to enforce department of transportation rules. It states as follows:

> **Enforcement.** For the purpose of the enforcement of this chapter and of all rules adopted pursuant to this chapter the powers of police officers are conferred upon the director of transportation and any officer, employee, or representative of the department of transportation. Without limiting the generality of the foregoing, the director and any person appointed by the director hereunder may serve and execute warrants, arrest offenders, and serve notices and orders. Every state and county officer charged with the enforcement of laws and ordinances shall enforce and assist in the enforcement of this chapter and of all rules adopted pursuant to this chapter.

If the relevant Hawai'i statutes had indicated a preference for a civil penalty, the second question would have been whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. We do not reach that question.

## B.

Although the United States Constitution and the Hawai'i Constitution literally accord the accused the right to a trial by jury in all criminal prosecutions, "it is not an absolute right." *State v. Wilson*, 75 Haw. 68, 73, 856 P.2d 1240, 1243 (1993) (citing *State v. Kasprzycki*, 64 Haw. 374, 375, 641 P.2d 978, 978 (1982)). As the Hawai'i Supreme Court said in 1924:

> strictly speaking, not every trifling infraction of the law constitutes a "crime," and it has been uniformly held that the word "crimes" as used in Article III of the Constitution, did not refer to petty offenses. "But petty offenses do not come within the meaning of the term 'crimes' so as to justify a trial by jury where one is accused of such an offense." Watson on the Constitution, Vol. 2, p. 1139, citing *Schick v. United States*, 195 U. S. 65 [24 S. Ct. 826, 49 L. Ed. 99]. As was stated by this court in *Ex Parte Higashi*, 17 Haw. 428, 439, "As to constitutional guaranties of a jury trial of all crimes and of the right to a speedy and public trial by an impartial jury in all criminal prosecutions, they do not refer to petty offenses or violations of ordinary municipal ordinances or to such offenses as at common law are summarily tried by a justice of the peace" (citing *Callan v. Wilson*, 127 U. S. 540, 8 S. Ct. 1301, 32 L. Ed. 223)[.]

*Territory v. Taketa*, 27 Haw. 844, 849–50 (1924). For a more detailed history, *see Callan v. Wilson*, 127 U.S. 540, 8 S. Ct. 1301, 32 L. Ed. 223 (1888), and *State v. Bennion*, 112 Idaho 32, 730 P.2d 952 (1986).

"[T]he determinative question in ascertaining whether there is a constitutional right to a jury trial in

a given case is whether the offense charged is a 'petty' one or a 'serious' one." *State v. Shak*, 51 Haw. 612, 614, 466 P.2d 422, 424, *cert. denied*, 400 U.S. 930, 91 S. Ct. 191, 27 L. Ed. 2d 190 (1970). The problem is to determine what facts are relevant to that decision. Hawai'i precedent has concluded that, except criminal contempt for which no maximum penalty is prescribed by statute, an offense is serious if:

1. it is by its nature serious; or

2. the magnitude of its maximum possible penalty makes it serious.

*Id.; State v. O'Brien*, 5 Haw. App. 491, 704 P.2d 905, *aff'd*, 68 Haw. 38, 704 P.2d 883 (1985).

An offense is by its nature serious if:

A. at common law it was triable by a jury;

B. it is of a grave character, affecting the public at large;

C. it involves moral delinquency; or

D. society regards it with sufficient opprobrium.
*Id.*

In cases of criminal contempt for which no maximum penalty is prescribed by statute, the magnitude question is answered on the basis of the penalty actually imposed. *Frank v. United States*, 395 U.S. 147, 149, 89 S. Ct. 1503, 1505, 23 L. Ed. 2d 162, 166 (1969).

We will examine the pertinent United States and Hawai'i cases in chronological order.

Prior to 1988, 18 U.S.C. § 1(3) defined a petty offense as "Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500 or both."

In 1975, the United States Supreme Court stated in relevant part as follows:

This Court has as yet not addressed the question whether and in what circumstances, if at all, the imposition of a fine for criminal contempt, unaccompanied by imprisonment, may require a jury trial if demanded by the defendant. . . .

* * *

. . . [W]e cannot accept the proposition that a contempt must be considered a serious crime under all circumstances where the punishment is a fine of more than $500, unaccompanied by imprisonment. It is one thing to hold that deprivation of an individual's liberty beyond a six–month term should not be imposed without the protections of a jury trial, but it is quite another to suggest that, regardless of the circumstances, a jury is required where any fine greater than $500 is contemplated. From the standpoint of determining the seriousness of the risk and the extent of the possible deprivation faced by a contemnor, imprisonment and fines are intrinsically different. It is not difficult to grasp the proposition that six months in jail is a serious matter for any individual, but it is not tenable to argue that the possibility of a $501 fine would be considered a serious risk to a large corporation or labor union. Indeed, although we do not reach or decide the issue tendered by the respondent – that there is no constitutional right to a jury trial in any criminal contempt case where only a fine is imposed on a corporation or labor union, Brief for Respondent 36 — we cannot say that the fine of $10,000 imposed on Local 70 in this case was a deprivation of such magnitude that a jury should have been

interposed to guard against bias or mistake. This union, the respondent suggests, collects dues from some 13,000 persons; and although the fine is not insubstantial, it is not of such magnitude that the union was deprived of whatever right to jury trial it might have under the Sixth Amendment.

*Muniz v. Hoffman,* 422 U.S. 454, 476–77, 95 S. Ct. 2178, 2189–90, 45 L. Ed. 2d 319, 335–36 (1975).

In 1976, the District of Columbia Circuit Court of Appeals concluded in relevant part as follows:

Certainly a $5,000 fine would be regarded as a serious hazard by most people, even some for whom it would not be calamitous. For this reason, we do not believe the [United States Supreme] Court intended the rationale of *Muniz* to extend to contempt cases involving individuals as distinguished from multimember organizations. For the very same reason, we are of the view that a fine as large as $5,000 cannot be assessed in a nonjury contempt proceeding against a contemnor who is an individual.

... We think, however, that the congressional enactment defining petty offenses must, at least for the time being, be accepted as the standard. ... Until the Supreme Court provides additional guidance in this gray area, we feel the sound doctrine is to accord the statutory definition its accustomed effect, and in the exercise of our supervisory authority to limit fines for criminal contempt in this circuit to $500, as imposed on individuals without a jury trial or a waiver thereof.

*Douglas v. First Nat'l Realty Corp.*, 543 F.2d 894, 902 (D.C. Cir. 1976) (footnotes omitted).

For similar reasons, the Ninth Circuit Court of Appeals concluded in *United States v. Hamdan*, 552 F.2d 276 (9th Cir. 1977), that an individual who faces the possibility of a fine of more than $500, or of imprisonment of more than six months, or both, for one offense has a federal constitutional right to a jury trial.

Hawai'i is within the ninth circuit. Authorities disagree as to whether, with respect to the United States Constitution, Hawai'i must follow the Ninth Circuit's decision in *Hamdan. United States v. Lykes Bros. S.S. Co.*, 432 F.2d 1076 (5th Cir. 1970); Annotation, *Duty of state courts to follow decisions of Federal courts, other than the Supreme Court, on Federal questions*, 147 A.L.R. 857 (1943). We agree with the authorities that conclude that we are not required to follow *Hamdan*.

In *State v. Kasprzycki*, 64 Haw. 374, 641 P.2d 978 (1982), the Hawai'i Supreme Court concluded that harassment, a petty misdemeanor with a maximum penalty of thirty days' confinement and/or a $500 fine, was a constitutionally petty offense. *Kasprzycki* recognizes the possibility that less than six months' imprisonment by itself may trigger a constitutional right to a trial by a jury.

In 1985, in *State v. O'Brien, supra*, this court and the Hawai'i Supreme Court concluded that driving under the influence of intoxicating liquor (DUI), with its maximum penalty of six months' imprisonment, a fine of $1,000, community service work, suspension or revocation of driver's license, and secondary consequences such as disruption of daily life, interruption of livelihood, and disaffection from other members of the community, was a constitutionally serious offense.

Commencing 1988, the combination of 18 U.S.C. §§ 19, 3559 and 3571 (West 1975 and Supp. 1993) define a petty offense as a misdemeanor punishable by no more than six months' imprisonment or an infraction punishable by a fine not exceeding $5,000 for an individual, or $10,000 for an organization.

In 1989, in *Blanton v. City of North Las Vegas*, 489 U.S. 538, 109 S. Ct. 1289, 103 L. Ed. 2d 550 (1989), the United States Supreme Court held that a maximum penalty of six months' imprisonment and a fine of $1,000 did not cause DUI to be a constitutionally serious offense. The Court stated in relevant part as follows:

> In recent years, however, we have sought more "objective indications of the seriousness with which society regards the offense." "[W]e had found the most relevant such criteria in the severity of the maximum authorized penalty." In fixing the maximum penalty for a crime, a legislature "include[s] within the definition of the crime itself a judgment about the seriousness of the offense." The judiciary should not substitute its judgment as to seriousness for that of a legislature, which is "far better equipped to perform the task, and [is] likewise more responsive to changes in attitude and more amenable to the recognition and correction of their misperceptions in this respect."
>
> In using the word "penalty," we do not refer solely to the maximum prison term authorized for a particular offense. A legislature's view of the seriousness of an offense also is reflected in the other penalties that it attaches to the offense. We thus examine "whether the length of the authorized prison term *or the seriousness of other*

*punishment* is enough in itself to require a jury trial." Primary emphasis, however, must be placed on the maximum authorized period of incarceration. Penalties such as probation or a fine may engender "a significant infringement of personal freedom," but they cannot approximate in severity the loss of liberty that a prison term entails. Indeed, because incarceration is an "intrinsically different" form of punishment, it is the most powerful indication whether an offense is "serious."

\* \* \*

. . . [W]e do find it appropriate to presume for purposes of the Sixth Amendment that society views [an offense carrying a maximum prison term of six months or less] as "petty." A defendant is entitled to a jury trial in such circumstances only if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a "serious" one. This standard, albeit somewhat imprecise, should ensure the availability of a jury trial in the rare situation where a legislature packs an offense it deems "serious" with onerous penalties that nonetheless "do not puncture the 6–month incarceration line."

489 U.S. at 541–43, 109 S. Ct. at 1292–93, 103 L. Ed. 2d at 555–57 (citations and footnotes omitted; emphasis in original).

In 1989, the Second Circuit Court of Appeals concluded in relevant part as follows:

We hold that the jury trial guarantee of the Sixth Amendment is not entirely unavailable to corporate defendants charged with criminal contempt, that there is an absolute dollar amount of fines above which the Sixth Amendment entitles all corporations and other organizations to a jury trial for criminal contempts, regardless of the contemnor's financial resources, and that this amount is $100,000.

\* \* \*

Once it is determined that the Sixth Amendment guarantees corporate contemnors a jury trial at some level of punishment severity, the issue becomes whether that level is always to be determined relatively by comparing the amount of a fine to the corporation's financial resources, or whether at some absolute dollar amount a fine is so serious as to require a jury trial regardless of the contemnor's financial condition. While the "relative" approach is appropriate to determine whether fines of fairly modest proportions have such a significant impact upon the contemnor that the offense should be deemed "serious" for jury trial purposes, we believe that, just as there is a six–month threshold that determines when imprisonment is "serious," there must be some dollar threshold applicable to fines. . . .

\* \* \*

. . . The congressional judgment [in 18 U.S.C.A. § 357(c)(3) (West Supp. 1989)] that $500,000 is an appropriate maximum felony fine indicates to us that some significant portion of this figure is the appropriate threshold for

determining an organization's right to a jury trial. We conclude that the jury right is available for a criminal contempt whenever the fine imposed on an organization exceeds $100,000.

For fines below the $100,000 threshold, it will remain appropriate to consider whether the fine has such a significant financial impact upon a particular organization as to indicate that the punishment is for a serious offense, requiring a jury trial. We need not consider what the appropriate fine threshold would be for individuals charged with criminal contempt.

*United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 663–65 (2d Cir. 1989) (citations omitted), *cert. denied*, 493 U.S. 1021, 110 S. Ct. 722, 107 L. Ed. 2d 741 (1990).

In 1992, in *State v. Jordan*, 72 Haw. 597, 825 P.2d 1065 (1992), the Hawai'i Supreme Court concluded that a reduction of the maximum imprisonment for DUI to thirty days and the addition of the possibility of the required installation of an ignition interlock system did not change DUI from being a serious offense to being a petty offense.

In 1993, in *State v. Wilson*, 75 Haw. 68, 856 P.2d 1240 (1993), the Hawai'i Supreme Court concluded that driving after license is suspended or revoked for DUI, with a maximum penalty of sixty days' imprisonment, a $1,000 fine, and a suspension of driver's license for an additional year, was a constitutionally petty offense.

In 1993, in *United States v. Nachtigal*, ___ U.S. ___, 113 S. Ct. 1072, 122 L. Ed. 2d 374 (1993) (per curiam), the United States Supreme Court stated in relevant part:

Because the maximum term of imprisonment is six months, DUI under 36 CFR § 4.23(a)(1) (1992)

is presumptively a petty offense to which no jury trial right attaches. . . .

The additional penalties imposed under the regulations are not sufficiently severe to overcome this presumption. As we noted in *Blanton*, it is a rare case where "a legislature packs an offense it deems 'serious' with onerous penalties that nonetheless do not puncture the 6–month incarceration line." ***Blanton***, 489 U.S., at 543, 109 S. Ct., at 1293 (internal quotation marks omitted). Here, the federal DUI offense carries a maximum fine of $5,000, and respondent faced, as an alternative to incarceration, a maximum 5–year term of probation. While the maximum fine in this case is $4,000 greater than the one in *Blanton*, this monetary penalty "cannot approximate in severity the loss of liberty that a prison term entails." *Id.*, at 542, 109 S. Ct., at 1292.

___ U.S. at ___, 113 S. Ct. at 1074, 122 L. Ed. 2d at 379.

As we outlined in the second and third paragraphs of this subsection, Hawai'i precedent has stated that if the offense satisfies any one of the following factual requirements, the offense is serious rather than petty:

1. the offense is by its nature serious because:

    A.    at common law it was triable by a jury; or

    B.    it is of a grave character, affecting the public at large; or

    C.    it involves moral delinquency; or

    D.    society regards it with sufficient opprobrium; or

2. the magnitude of the possible penalty for the offense makes it serious.

*Blanton* and *Nachtigal* imply that the United States does not recognize alternative factual requirements Nos. (1)(B), (C), and (D). Both cases concluded that alternative factual requirement No. 2, primarily the maximum period of incarceration, had not been satisfied.

*Wilson* impliedly decided that alternative factual requirements Nos. 1(A) – (C) and 2 had not been satisfied. It expressly decided that alternative factual requirement No. (1)(D) had not been satisfied and based that decision on the fact the legislature expressly stated that first–time DUI offenders have committed a petty offense and shall not be entitled to a jury trial. Although *Wilson* did not expressly say so, it logically follows from it that the only fact that will satisfy alternative factual requirement No. 1(D) is stated in HRS § 806–60 (1985) as follows:

> **Jury of twelve required.** Any defendant charged with a serious crime shall have the right to trial by a jury of twelve members. "Serious crime" means any crime for which the defendant may be imprisoned for six months or more.

In Simeona's case, we conclude that the relevant alternative factual requirement is No. 2. This requirement recognizes that there are points at which the magnitude of the authorized penalty for an offense makes it serious and triggers the defendant's federal and/or state constitutional right to a jury trial. These are the "triggering points." When deciding whether alternative factual requirement No. 2 has been satisfied, it is the judiciary's constitutional duty to look at the penalty imposed by the legislature, not at the legislature's assessment of the seriousness of that penalty. The legislature's assessment is colored by non–constitutional considerations such as the economic reality that non–jury trials are much less

expensive and time consuming than jury trials. The judiciary's assessment is based solely on the constitutional right of a defendant accused of a constitutionally serious crime to a trial by an impartial jury. If the legislature wants no jury trials for a particular offense, it must authorize a maximum penalty that does not reach any triggering point. If it authorizes a maximum penalty that reaches a triggering point, it cannot impinge upon a defendant's constitutional right to a jury trial by declaring that the offense is not a serious crime.

*O'Brien*, *Jordan*, and *Wilson* agree with *Blanton* that in cases where the maximum possible imprisonment has not by itself done so, the gravity of the mix of maximum penalties may reach a triggering point.

No Hawai'i case supports *Blanton*'s conclusions that, when deciding whether a triggering point has been reached, the primary emphasis must be placed on the maximum authorized period of incarceration and that penalties other than incarceration cannot approximate in severity the loss of liberty that a prison term entails. This may be true of people who have little time and lots of money and public prestige. It is not true of many defendants who are found guilty. We recognize that in Hawai'i, the maximum fine is limited to the amount the defendant is or will be able to pay. HRS § 706–641 (1985 and Supp. 1992). Exactly what "able to pay" means, however, has not been determined.

With respect to fines, it may be that the amount of the triggering point depends on whether the defendant is a corporation, partnership, labor union, or an individual. With respect to each category of defendant, however, there is no more reason to have the amount–of–fine triggering point depend on the impact the maximum fine has on the

specific defendant than there is to have the imprisonment triggering point depend on the impact the length of the maximum imprisonment has on the specific defendant.

In Simeona's case, the magnitude of the maximum possible penalty was as follows:

1. He was being charged with two violations, not felonies, misdemeanors, or petty misdemeanors;

2. The authorized maximum punishment was a $10,000 fine for each violation and a two–year deprivation of the privileges of operating and mooring any vessel in state waters.

3. We are unaware of secondary consequences such as uninsurability, a substantial increase in insurance rates, or the consequences mentioned in *State v. O'Brien*, 68 Haw. at 44, 704 P.2d at 887.

In our view, a possible $10,000 fine plus the possible deprivation of the privileges of operating and mooring any vessel in Hawai'i waters for a period of two years causes each penal offense to be serious and triggers the state constitutional right to a jury trial. The following facts support our conclusion:

First, prior to November 7, 1978, Hawai'i's constitutional monetary triggering point in civil cases was $100.01. Commencing November 7, 1978, it was $1,000.01. Commencing November 8, 1988, Article 1, Section 13, of the Hawai'i State Constitution states that: "In suits at common law where the value in controversy shall exceed five thousand dollars, the right of trial by jury shall be preserved." In the absence of express language in Hawai'i's constitution requiring us to do so, we will not interpret it to mandate a lower right–to–jury–trial monetary triggering point for civil cases than for criminal cases. Defendants in criminal cases should have

no less of a constitutional right to a jury trial than parties in civil cases.

Second, according to the State of Hawai'i Data Book 1992, Table 392, the annual disposable per capita personal income in 1991 was $17,873. Thus, $10,000 net after taxes in 1991 was more than half of the disposable per capita personal income in 1991.

Third, $10,000 is ten times the usual maximum fine for a violation. HRS § 706–640 (Supp. 1992) authorizes fines as follows:

> **Authorized fines.** A person who has been convicted of an offense may be sentenced to pay a fine not exceeding:
>
> (1) $50,000, when the conviction is of a class A felony, murder in the first or second degree, or attempted murder in the first or second degree;
>
> (2) $25,000, when the conviction is of a class B felony;
>
> (3) $10,000, when the conviction is of a class C felony;
>
> (4) $2,000, when the conviction is of a misdemeanor;
>
> (5) $1,000, when the conviction is of a petty misdemeanor or a violation;
>
> (6) Any higher amount equal to double the pecuniary gain derived from the offense by the defendant;
>
> (7) Any higher or lower amount specifically authorized by statute.

Fourth, as noted above, the federal monetary trigger for individuals may be $5,000.01.

Fifth, in this island state, the denial to a boater of the privileges of operating and mooring any vessel in

Hawai'i waters for a period of two years can be a signifi-
cant penalty.

Therefore, we conclude that Simeona was charged
with a "serious" offense and was entitled to a jury trial
under the Hawai'i constitution.

## 2.

Simeona challenges the denial of his District Court
Rules of Civil Procedure (DCRCP) Rule 37(a) Motion
Compelling Discovery. Since this is not a civil case, how-
ever, DCRCP Rule 37(a) does not apply. The Hawai'i
Rules of Penal Procedure (HRPP) apply. According to
HRPP Rule 16(d), the district court does not have discre-
tion to require disclosure in prosecutions of violations.
That subsection states as follows:

> *Discretionary Disclosure.* Upon a showing of
> materiality and if the request is reasonable, the
> court in its discretion may require disclosure as
> provided for in this Rule 16 in cases other than
> those in which the defendant is charged with a
> felony, but not in cases involving violations.

## 3.

Simeona challenges the district court's allowing the
State to prove its right to control the premises in question
by introducing a certified statement signed by the County
Tax Administrator rather than by introducing a deed. On
this point, we side with the State.

The State cannot lawfully prosecute a person for
unlawfully storing the person's boat on a dry storage
area if the State does not lawfully control that dry storage
area. The State introduced evidence that it was in actual
control of the dry storage area where Simeona stored his

motorboat and that the county tax assessor's record showed that the State was the owner of the dry storage area real property. In our view, the county's real property tax records are sufficiently reliable in the absence of contradictory evidence in defense. Therefore, we conclude that in cases where the State cites a person for unlawfully storing the person's personal property on the State's real property, evidence that the State is (1) actually in control of the real property and (2) listed by the county as the owner of the real property for real property tax purposes, is *prima facie* evidence that the State lawfully controls the real property.

Thus, proof that Simeona's right to occupy the dry storage area is superior to the State's right to control the dry storage area would be a defense. Since this defense is not an affirmative defense, Simeona would be entitled to an acquittal if (1) there was evidence of the defense in the record and (2) the trier–of–fact found that Simeona's evidence, when considered in the light of any contrary prosecution evidence, raised a reasonable doubt as to Simeona's guilt. HRS § 701–115(2)(a) (1985). The district court allowed Simeona the opportunity to introduce evidence of his alleged defense. Simeona did not do so. Assuming Simeona proved that the 1898 deed from his great–grandparents to Mrs. Greenwell was a forgery, that fact is insufficient to raise a reasonable doubt that, in 1991, Simeona's right to occupy the dry storage area was superior to the State's right to control the dry storage area. Therefore, the State's *prima facie* evidence was sufficient to support the court's decision in this case.

## 4.

Simeona challenges the "repeated denial to [his] rights of access to his case dockett [sic] (public record) and withholding/or denying [him] of evidence submitted (certified statement, exh. 1)[.]" Upon a review of the record, we conclude that this point has no merit.

### CONCLUSION

Accordingly, we vacate the district court's September 26, 1991 judgment convicting defendant July Simeona of two counts of violating Hawai'i Administrative Rules Governing Operations of Boats, Small Boat Harbors, and Permits § 19–62–17 and we remand for a jury trial.

*July Simeona, pro se* defendant–appellant, on the brief.

*Melvin H. Fujino,* Deputy Prosecuting Attorney, County of Hawai'i, on the brief for plaintiff–appellee.