97 P.3d 418

**STATE of Hawaiʻi, Plaintiff–Appellee,**

v.

**Pete K. BASABE, Defendant–Appellant.**

**No. 25373.**

Intermediate Court of Appeals of Hawaiʻi.

Aug. 16, 2004.

James Biven, on the briefs, Kailua Kona, for defendant-appellant.

Frederick D. Giannini, Deputy Prosecuting Attorney, County of Hawai'i, on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE, and LIM, JJ.

Opinion of the Court by LIM, J.

Pete K. Basabe (Basabe) appeals the October 2, 2002 judgment of the district court of the third circuit [1] that convicted him of four offenses relating to his taking of aquatic life for aquarium purposes. Of the four, his conviction of a petty misdemeanor for doing so in the Miloli'i fisheries management area, in violation of Hawaii Administrative Rules (HAR) § 13–60.3–3 (December 31, 1999),[2] is

---

1. The Honorable Joseph P. Florendo, Jr., judge presiding.

2. Hawaii Administrative Rules (HAR) § 13–60.3–3(a) (December 31, 1999) provides that, "Unless otherwise authorized by law, it is unlawful for any person to take aquatic life for aquarium purposes in any area designated in this chapter." HAR § 13–60.3–19 (December 31, 1999) states that, "The Miloli'i fisheries management area shall be identified on shore to the north by Makahiki Point and to the south by Kakio Point."

HAR § 13–60.3–4 (December 31, 1999) provides that, "Any person violating the provisions of this chapter, or the terms and conditions of any permit issued as provided by this chapter, shall be punished as provided by sections 187A–12.5 and 188–70, Hawaii Revised Statutes, or as maybe [sic] otherwise provided by law."

Hawaii Revised Statutes (HRS) ch. 188 (1993 & Supp.2003) sets out "Fishing Rights and Regulations." HRS § 188–70 (Supp.2003) reads, in relevant part, as follows:

(a) Any person violating any provision of this chapter . . ., or any rule adopted pursuant thereto, is guilty of a petty misdemeanor and, in addition to any other penalties, shall be fined not less than:

(1) $100 for a first offense;

(2) $200 for a second offense; and

(3) $500 for a third or subsequent offense.

. . . .

(c) The fines specified in this section shall not be suspended or waived.

HRS § 706–663 (1993) provides, in relevant part, that "the court may sentence a person who has been convicted of a . . . petty misdemeanor to imprisonment for a definite term to be fixed by the court and not to exceed . . . thirty days in the case of a petty misdemeanor." HRS § 706–640 (Supp.2003) provides in pertinent part that, "A person who has been convicted of an offense may be sentenced to pay a fine not exceeding: . . . . $1,000, when the conviction is of a petty misdemeanor[.]" (Enumeration omitted; format modified.)

HRS § 187A–12.5 (Supp.2003) reads, in relevant part, as follows:

(a) Except as otherwise provided by law, the board [of land and natural resources] is authorized to set, charge, and collect administrative fines and to recover administrative fees and costs, including attorney's fees and costs, or bring legal action to recover administrative fines, fees, and costs, including attorney's fees and costs, or payment for damages or for the cost to correct damages resulting from a violation of subtitle 5 of title 12 or any rule adopted thereunder.

. . . .

(c) For all other violations the administrative fines shall be as follows:

(1) For a first violation, a fine of not more than $1,000;

(2) For a second violation within five years of a previous violation, a fine of not more than $2,000; and

(3) For a third or subsequent violation within five years of the last violation, a fine of not more than $3,000.

. . . .

(e) In addition to subsection (c), a fine of up to $1,000 may be levied for each specimen of

at issue in this appeal. Because Basabe asserts he was alleged to have taken seventeen specimens of aquatic life, he contends the maximum fine for his violation of HAR § 13–60.3–3 was $18,000, pursuant to HAR § 13–60.3–4 (December 31, 1999) and Hawaii Revised Statutes (HRS) §§ 187A–12.5(c)(1) and –12.5(e) (Supp.2003). Basabe avers, thereon, that the district court erred when it denied his request for a jury trial, because his offense was a constitutionally "serious" one. We hold, thereon, that it was not. Hence, the district court was right to turn down Basabe's request for a jury trial. Accordingly, we affirm the judgment of the district court.

## I. Background.

At Basabe's arraignment, the district court denied his oral request for a jury trial. His bench trial began on April 23, 2002, and he was convicted as charged of all four offenses. For his violation of HAR § 13–60.3–3, Basabe was fined $500. Fines ranging from $100 to $500 were levied for the other three offenses, but all four fines were imposed on a "concurrent" basis.

## II. Discussion.

■ The sole question presented in this appeal is whether there is a constitutional right to a jury trial for a violation of HAR § 13–60.3–3, where the offense is a petty misdemeanor, HAR § 13–60.3–4; HRS § 188–70 (Supp.2003), and the purported maximum fine is $18,000. *See* HAR § 13–60.3–4; HRS §§ 187A–12.5(c)(1) & –12.5(e). This is a question of constitutional law. "[W]e review questions of constitutional law *de novo* under the 'right/wrong' standard." *State v. Rogan,* 91 Hawai'i 405, 411, 984 P.2d 1231, 1237 (1999) (citations omitted).

*1. The Sixth Amendment to the United States Constitution.*

■ The Sixth Amendment to the United States Constitution provides in pertinent part that, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]" "The Sixth Amendment right to a jury trial applies to the States through the Fourteenth Amendment." *Blanton v. City of North Las Vegas,* 489 U.S. 538, 541 n. 4, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989) (citation omitted). The United States Supreme Court has held, however, that the Sixth Amendment right to a jury trial is not absolute. "Petty" offenses are unencumbered by the Sixth Amendment's jury trial provision. *Id.* at 541, 109 S.Ct. 1289. Thus, the determinative inquiry here is whether the subject violation of HAR § 13–60.3–3 was a "petty" or "serious" offense under the Sixth Amendment.

■ The Supreme Court has made it clear that where the maximum prison term for an offense is six months or less, there is a presumption the offense is "petty" for Sixth Amendment purposes. *Blanton,* 489 U.S. at 542–43, 109 S.Ct. 1289. "A defendant is entitled to a jury trial in such circumstances only if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one." *Id.* at 543, 109 S.Ct. 1289. But "because incarceration is an intrinsically different form of punishment, it is the most powerful indication whether an offense is 'serious.' " *Id.* at 542, 109 S.Ct. 1289 (citation and related internal quotation marks omitted). "Penalties such as probation or a fine may engender a significant infringement of personal freedom, but they cannot approximate in severity the loss of liberty that a prison term entails." *Id.* (citation and internal quotation marks omitted). Accordingly, it remains a "rare situation where a legislature packs an offense it deems 'serious' with onerous penalties that nonetheless do not puncture the 6–month incarceration line." *Id.* at 543, 109 S.Ct. 1289

all other aquatic life taken, killed, or injured in violation of subtitle 5 of title 12 or any rule adopted thereunder.
(f) Any criminal penalty for any violation of subtitle 5 of title 12 or any rule adopted thereunder shall not be deemed to preclude the State from recovering additional administrative fines, fees, and costs, including attorney's fees and costs.
Subtitle 5 of Title 12, HRS (1993 & Supp.2003), entitled "Aquatic Resources and Wildlife," comprises HRS §§ 187 through 192.

(citation and related internal quotation marks omitted). Indeed, even if authorized fines or other criminal sanctions ostensibly push the overall severity of punishment well beyond that of the prison term itself, the Supreme Court has consistently declined to hold the presumption overcome, such that a departure from the basic six-month rule is apparently quite the exception. *See, e.g., id.* at 543–45, 109 S.Ct. 1289; *United States v. Nachtigal,* 507 U.S. 1, 4–6, 113 S.Ct. 1072, 122 L.Ed.2d 374 (1993).

The *Blanton* Court held that the Nevada DUI statute under consideration, which authorized a six-month jail term or, alternatively, forty-eight hours of community service "while dressed in distinctive garb which identifies [the defendant] as a DUI offender[,]" *Blanton,* 489 U.S. at 539, 109 S.Ct. 1289 (original brackets, citation and internal quotation marks omitted), was constitutionally "petty," even though additional sanctions were available, including a fine up to $1,000, automatic loss of driving privileges for ninety days and mandatory alcohol abuse education. *Id.* at 539–40, 109 S.Ct. 1289.

Similarly, in *Nachtigal,* the Supreme Court held that the federal offense of DUI in a national park was constitutionally "petty." The governing federal regulation carried a penalty of six months in jail and a fine up to $5,000. A five-year term of probation could be imposed in the alternative, upon a host of relatively draconian discretionary conditions.[3] The *Nachtigal* Court nonetheless stated that its consideration was "quite obviously controlled" by its decision in *Blanton, Nachtigal,* 507 U.S. at 3, 113 S.Ct. 1072, and required "only a relatively routine application of the rule announced in *Blanton* [,]" *id.* at 4, 113 S.Ct. 1072, despite the six-month jail term and the five-fold increase in the allowable fine, or the five-year probationary term with its potentially condign conditions. Reiterat-

ing the *Blanton* principles detailed above, *id.* at 3–5, 113 S.Ct. 1072, the *Nachtigal* Court held that the foregoing mix of authorized penalties did not render the offense "serious" rather than "petty." *Id.* at 5–6, 113 S.Ct. 1072.

In our case, the maximum time in jail for a violation of HAR § 13–60.3–3 is thirty days. HAR § 13–60.3–4; HRS § 188–70; HRS § 706–663 (1993). Hence, under the *Blanton* rule, a violation of HAR § 13–60.3–3 is presumptively "petty." *Blanton,* 489 U.S. at 542–43, 109 S.Ct. 1289; *Nachtigal,* 507 U.S. at 3, 113 S.Ct. 1072. Nevertheless, Basabe claims his offense was "serious" because he contends he was subject in addition to a maximum fine of $18,000 under HAR § 13–60.3–4 and HRS §§ 187A–12.5(c)(1) and –12.5(e). However, it is without cavil that the offenses in *Blanton* and *Nachtigal* each authorized a qualitatively more severe mix of penalties than a mere thirty days in jail and a fine of $18,000, yet violations thereof remain "petty" offenses under Supreme Court jurisprudence. We reiterate the Supreme Court's caveat, that "it is a rare case where 'a legislature packs an offense it deems "serious" with onerous penalties that nonetheless do not puncture the 6–month incarceration line.' " *Nachtigal,* 507 U.S. at 5, 113 S.Ct. 1072 (quoting *Blanton,* 489 U.S. at 543, 109 S.Ct. 1289). The presumption stands, and Basabe's offense was "petty" for Sixth Amendment purposes. Accordingly, we hold Basabe had no right to a jury trial under the United States Constitution, even if he is correct that his offense carried an $18,000 fine as one of its punishments.

### 2. Article I, section 14 of the Hawai'i Constitution.

Article I, section 14 of the Hawai'i Constitution states in relevant part that, "In all

---

**3.** There are 21 discretionary conditions which the sentencing court may impose upon a defendant. Under 18 U.S.C. § 3563(b), a court may require, among other things, that the defendant (1) pay restitution; (2) take part in a drug and alcohol dependency program offered by an institution, and if necessary, reside at the institution; (3) remain in the custody of the Bureau of Prisons during nights and weekends for a period not exceeding the term of imprisonment; (4)

reside at or participate in a program of a community correctional facility for all or part of the probationary term; or (5) remain at his place of residence during nonworking hours, and, if necessary, this condition may be monitored by telephonic or electronic devices. §§ 3563(b)(3), (b)(10), (b)(11), (b)(12), (b)(20).

*United States v. Nachtigal,* 507 U.S. 1, 5, 113 S.Ct. 1072, 122 L.Ed.2d 374 n. (1993).

criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury[.]" Regarding this right, the Hawai'i Supreme Court has acknowledged that,

Although this court has recognized the importance of the right to a jury trial, it is not an absolute right. [State v.] Nakata, 76 Hawai'i [360,] 367, 878 P.2d [699,] 706 [ (1994) ] (citing State v. Wilson, 75 Haw. 68, 73, 856 P.2d 1240, 1243 (1993)). Specifically, we have held that a defendant charged with a petty crime does not have a constitutional right to a trial by a jury. Id.

State v. Sullivan, 97 Hawai'i 259, 264, 36 P.3d 803, 808 (2001).

■ Hence, Basabe's entitlement to a jury trial under the Hawai'i Constitution, like his right to a jury trial under the United States Constitution, depends upon whether a violation of HAR § 13–60.3–3 is a constitutionally "petty" or "serious" offense:

In making a determination whether an offense is petty or serious, we have consistently employed the following analysis:

We analyze three factors to determine whether an offense is constitutionally petty or serious: (1) treatment of the offense at common law; (2) the gravity of the offense; and (3) authorized penalty.

Under the first factor, we consider the "traditional treatment" of the offense and whether the offense was indictable at common law, triable at common law by a jury, or tried summarily without a jury.

Under the second factor, we consider whether an offense affects the public at large, reflects moral delinquency, or carries a sufficient disgrace to require labeling the offense as constitutionally serious. In applying the second factor, the legislature's perception of an offense, as reflected by its statements in legislative history, often provides a strong indication of society's view of the gravity of an offense.

Finally, the third factor focuses on the authorized penalty for the offense. We consider not only the maximum possible prison term, but also the possible additional statutory "mix of penalties" that may attach to the offense.

State v. Lindsey, 77 Hawai'i 162, 163, 883 P.2d 83, 84 (1994) (quoting Nakata, 76 Hawai'i at 367, 878 P.2d at 706). An offense is not automatically deemed serious upon satisfaction of any one of the factors. State v. Ford, 84 Hawai'i 65, 70, 929 P.2d 78, 83 (1996). Rather, "we must apply all three factors ... in determining whether an offense is petty or serious." Lindsey, 77 Hawai'i at 163, 883 P.2d at 84 (quoting Nakata, 76 Hawai'i at 371, 878 P.2d at 710).

Primary emphasis, however, must be placed on the maximum authorized period of incarceration. Penalties such as probation or a fine may engender "a significant infringement of personal freedom," but they cannot approximate in severity the loss of liberty that a prison term entails. Indeed, because incarceration is an "intrinsically different" form of punishment, it is the most powerful indication of whether an offense is "serious."

Nakata, 76 Hawai'i at 368, 878 P.2d at 707 (quoting Blanton, 489 U.S. at 542, 109 S.Ct. 1289).

Moreover, in Lindsey, this court adopted the rule that "if the maximum authorized term of imprisonment for a particular offense does not exceed thirty days, it is presumptively a petty offense to which the right to a jury trial does not attach." 77 Hawai'i at 165, 883 P.2d at 86. Where the maximum term of imprisonment is not more than thirty days, the presumption can be overcome only in the most extraordinary cases. Id. Such a case arises when consideration of the other relevant Nakata factors—the treatment of the offense at common law, the gravity of the offense, and, under the authorized penalty factor, the possible statutory "mix of penalties" other than imprisonment—"unequivocally demonstrate[ ] that society demands that persons charged with the offense at issue be afforded the right to a jury trial." Id.

Sullivan, 97 Hawai'i at 264–65, 36 P.3d at 808–9 (brackets and ellipsis in the original).

First, because HRS § 188–70 authorizes a maximum of only thirty days in jail for a violation of HAR § 13–60.3–3, this case falls within the parameters of the presumption adopted in *Lindsey*, 77 Hawaiʻi at 165, 883 P.2d at 86. We therefore pursue the tripartite *Nakata* analysis under the presumption that a violation of HAR § 13–60.3–3 is a "petty" offense unaccompanied by the jury trial right set out in the Hawaiʻi Constitution. *Lindsey*, 77 Hawaiʻi at 165, 883 P.2d at 86.

"Under the first factor, we consider the 'traditional treatment' of the offense and whether the offense was indictable at common law, triable at common law by a jury, or tried summarily without a jury." *Lindsey*, 77 Hawaiʻi at 163, 883 P.2d at 84 (block quote format omitted) (quoting *Nakata*, 76 Hawaiʻi at 367, 878 P.2d at 706). Here, there is no indication the unlawful taking of aquatic life from a fisheries management area was indictable at common law.

> Because we have no indication that [taking of aquatic life offenses] were indictable at common law, this factor plays no role in our determination whether a violation of [HAR § 13–60.3–3] is constitutionally serious. *See Nakata*, 76 Hawaiʻi at 374 n. 20, 878 P.2d at 713 n. 20 (first factor inapplicable to petty/serious inquiry where statutory DUI not shown to have a correlative precursor at common law); *Wilson*, 75 Haw. at 74, 856 P.2d at 1244 (first factor irrelevant because DUI-license suspension offense not indictable at common law).

*Ford*, 84 Hawaiʻi at 71, 929 P.2d at 84.

> Under the second factor, we consider whether an offense affects the public at large, reflects moral delinquency, or carries a sufficient disgrace to require labeling the offense as constitutionally serious. In applying the second factor, the legislature's perception of an offense, as reflected by its statements in legislative history, often provides a strong indication of society's view of the gravity of an offense.

*Lindsey*, 77 Hawaiʻi at 163, 883 P.2d at 84 (block quote format omitted) (quoting *Nakata*, 76 Hawaiʻi at 367, 878 P.2d at 706). For his only argument in this regard, Basabe points to a House of Representatives conference committee report in which one representative spoke against the passage of the act that became HRS § 187A–12.5 (S.B. 1597), because he deemed the possible penalties too severe. Hse. Conf. Comm. Rep. No. 8, in 1998 House Journal, at 794. The bill passed the House, however, and by a vote of forty-nine to one, the one being the protesting representative. 1998 House Journal, at 794. There is otherwise no indication our society deems the offense so egregious as to gird a defendant with the right to a jury trial.

Finally, "under the authorized penalty factor," we consider "the possible statutory mix of penalties other than imprisonment[.]" *Sullivan*, 97 Hawaiʻi at 265, 36 P.3d at 809 (citation and internal quotation marks omitted). Basabe maintains that the additional statutory penalties include a fine of $18,000 under HAR § 13–60.3–4 and HRS §§ 187A–12.5(c)(1) and –12.5(e), and this is the essential basis for his claim of right to a jury trial.

We observe in this respect that Basabe was sentenced to a fine of only $500 and received no jail time. Basabe maintains, however, that *State v. Simeona*, 10 Haw.App. 220, 864 P.2d 1109 (1993), is dispositive in this regard. Simeona was twice cited for storing his boat in violation of HAR § 19–62–17(a)(1), which carried a maximum fine of $10,000 plus a two-year suspension of operating or mooring privileges in State waters, but no jail time. Simeona was fined $25 for each violation. *Simeona*, 10 Haw.App. at 222, 864 P.2d at 1111. We held that the possible fine and suspension rendered the violation constitutionally "serious." *Id.* at 245, 864 P.2d at 1120–21. In doing so, we implied that any criminal fine of more than $5,000 would *ipso facto* trigger the constitutional right to a jury trial:

> Commencing November 8, 1988, Article 1, Section 13, of the Hawaiʻi State Constitution states that: "In suits at common law where the value in controversy shall exceed five thousand dollars, the right of trial by jury shall be preserved." In the absence of express language in Hawaiʻi's constitution requiring us to do so, we will not interpret it to mandate a lower right-to-jury-trial monetary triggering point for civil cases than for criminal cases. Defen-

dants in criminal cases should have no less of a constitutional right to a jury trial than parties in civil cases.

*Simeona,* 10 Haw.App. at 245–46, 864 P.2d at 1121. The supreme court reversed, however, stating that

> we explicitly overrule *Simeona* to the extent that it (1) articulates a petty/serious analysis that contradicts the analysis set out in our case law (of which *Lindsey, Nakata, Wilson,* and *[State v.] O'Brien* [, 68 Haw. 38, 704 P.2d 883 (1985),] are reflective) and (2) holds that a violation of Rule 19–62–17 triggers the state constitutional right to a jury trial.

*Ford,* 84 Hawai'i at 70, 929 P.2d at 83.

Ford, like Simeona, was cited for two violations of HAR § 19–62–17. In addressing the $10,000 fine attendant upon each violation under its own "petty/serious" analysis, the *Ford* court reasoned as follows:

> We have expressed our willingness to look to federal case law as a guide in determining when the right to a jury trial attaches. *See [State v.] Shak,* 51 Haw. [612,] 615, 466 P.2d [422,] 424 [ (1970) ]. Particularly illustrative with regard to our analysis of the authorized penalty factor is *United States v. Soderna,* 82 F.3d 1370 (7th Cir.1996), and its discussion of United States Supreme Court precedent.

> The *Soderna* court looked at two United States Supreme Court cases—*Blanton* and [*Nachtigal* ]—in assessing whether Soderna's offense, blockading an abortion clinic, in violation of the Freedom of Access to Clinic Entrances Act (FACE), was constitutionally serious for purposes of securing his right to a jury trial.

> In *Blanton,* the Supreme Court held that a state statute, authorizing a maximum punishment for first time DUI offenders of six months' imprisonment, plus a $1,000 fine, plus loss of driving privileges for ninety days, plus mandatory attendance at an alcohol abuse center at the defendant's expense, constituted a petty offense. The *Nachtigal* Court held that a federal regulation, authorizing a maximum punishment for first time DUI offenders (in a national park) of six months' impris-

onment plus a maximum fine of $5,000, also constituted a petty offense.

> In *Nachtigal,* the Supreme Court stated that its holding in that case was "quite obviously controlled" by its decision in *Blanton,* despite the five-fold increase in the maximum allowable fine. *Nachtigal,* 507 U.S. at 3, 113 S.Ct. at 1073. The *Soderna* court highlighted the fact that the Supreme Court "attached no significance to the higher fine," 82 F.3d at 1378, and focused on the Supreme Court's remark that "this monetary penalty [of $5,000] 'cannot approximate in severity the loss of liberty that a prison term entails.' " *Soderna,* 82 F.3d at 1378 (quoting *Nachtigal,* 507 U.S. at 5, 113 S.Ct. at 1074).

> Relying on the letter and spirit of *Blanton* and *Nachtigal,* the *Soderna* court held that the maximum penalty authorized under FACE for a first offense—up to six months' imprisonment and a fine of up to $10,000—did not render the underlying offense constitutionally serious. The court acknowledged that a particularly severe monetary penalty could convert a petty offense into a serious one, but determined that $10,000 did not approach the requisite level of severity:

>> If the fine for a first-time [offense] were $1 million, it would be hard to resist the inference that the offense was serious rather than petty. [However, w]e need not decide where between $5,000 and $1 million the line should be drawn. It is enough that, in light of the reasoning of *Blanton* and *Nachtigal,* it cannot be drawn at $10,000.

> *Soderna,* 82 F.3d at 1379. We agree with the *Soderna* court. The maximum penalty of $10,000 authorized under HRS § 266–25[ (1993) ], particularly when considering that the statute authorizes no term of imprisonment, does not tend to move a violation of Rule 19–62–17 from the realm of a petty into that of a serious offense.

*Ford,* 84 Hawai'i at 72–73, 929 P.2d at 85–86 (some brackets in the original) (footnote omitted).

Similarly, we subscribe to the supreme court's "strongly-held view" that "penalties such as probation or a fine may engender a

significant infringement of personal freedom, but they cannot approximate in severity the loss of liberty that a prison term entails." *Sullivan*, 97 Hawai'i at 267, 36 P.3d at 811 (brackets, citations and internal quotation marks omitted). Accordingly, we do not believe Basabe's violation of HAR § 13–60.3–3, even if it did indeed involve an $18,000 fine significantly beyond the frontier of monetary fines heretofore examined by our appellate courts, is the "extraordinary case where consideration of the mix of penalties unequivocally demonstrates that society demands that persons charged with the offense at issue be afforded the right to a jury trial." *Sullivan*, 97 Hawai'i at 267, 36 P.3d at 811 (citation and internal quotation marks omitted). We therefore hold that Basabe did not have a right to a jury trial under our Hawai'i Constitution.

### III. Conclusion.

The district court's October 2, 2002 judgment is affirmed.