STATE OF HAWAII, Plaintiff-Appellee, *v.* PHILIP T. OGATA and GERALD F. SULLIVAN, Defendants-Appellants

NO. 5822

DECEMBER 27, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY MENOR, J.

The defendants appeal from the judgment and sentence of the trial court based upon their convictions for the offense of carrying a deadly weapon, in violation of HRS § 134-51. The recovery of a sheathed sword-cane, which was found lying against the raised transmission tunnel in front of the center portion of the front seat of the defendants' vehicle, and wooden knuckles with shark's teeth embedded in the striking surface, which were found on the floor of the vehicle, supplied the basis for the charge. Both of these instruments were "deadly or dangerous weapons" within the meaning of HRS § 134-51.

Two issues are presented in this appeal: (1) Whether the trial court erred in denying the defendants' motion to suppress the weapons as evidence, and (2) whether *concealment* of the weapons *within the vehicle* was a necessary element of the crime charged.

I

We consider first the issue of whether the defendants' motion to suppress should have been granted. From the record before us, we hold that the trial court properly denied the motion. The defendants' vehicle was stopped by the police at approximately 8:52 p.m. on the evening of October 7, 1974. Earlier that night, one Jacqueline Richie had called the police department to report that the Church of Scientology had received a telephone call from an anonymous caller threatening to kill someone at the church that evening. Officer Tadly was one of the officers who responded to the complaint. He reached 143 Nenue Street in Honolulu, where the church was located, at 8:47 p.m. Officers Wery and Foley were already interviewing the complainant when he arrived. Shortly thereafter, the officers saw a Chevrolet El Camino automobile cruising slowly by, and noticed the two men in the vehicle looking in their direction. Because the threat presumably was to have been carried out at 9:00 p.m., Officer Tadly deemed it advisable to follow them. At the same time he

called the police dispatcher for an expedited registration check of the automobile. As they neared the next street intersection near the M's Ranch House restaurant, Officer Tadly was informed by police dispatch that the vehicle was registered under defendant Ogata, who had been named by the complainant as the suspected caller. The officer immediately turned on his police "blue light," and shortly the other vehicle turned into and came to a stop in the restaurant parking area. Officer Tadly followed and after leaving his vehicle walked over to talk to the two men. He found defendant Ogata behind the wheel with defendant Sullivan sitting on the passenger side. While speaking to the occupants, he detected a strong alcoholic odor emanating from inside the vehicle. He immediately ordered the two men out of the automobile, for the purpose of verifying their identification and to administer a sobriety test to the driver. While Officer Tadly was administering the test and examining their identification papers, Officer Foley, who in the meantime had arrived at the scene, looked into the vehicle from the outside and saw the sheathed sword-cane. Upon opening the car door to secure the instrument, he saw the knuckles on the vehicle floor.

Stopping the vehicle in which the defendants were riding was a seizure of their persons within the meaning of the Fourth Amendment to the United States Constitution. *See Terry v. Ohio,* 392 U.S. 1 (1968). The stop in this case, however, was justified. The conduct of the police was in response to a bonafide complaint. Defendant Ogata was named by the complainant as the suspected caller. He was present in the vicinity at or about the time the threat was supposed to have been carried out. The vehicle was not stopped until it was ascertained that he was the owner of the automobile. In acting as they did, the police could point to specific and articulable facts from which they could reasonably infer that criminal activity involving defendant Ogata was possibly afoot. *Cf. United States v. Robinson,* 536 F.2d 1298 (9th Cir. 1976). *See Terry v. Ohio, supra; State v. Joao,* 55 Haw. 601, 525 P.2d 580 (1974); *State v. Onishi,* 53 Haw. 593, 499 P.2d 657 (1972). At the very least, it was incumbent upon

the police to take some investigative action designed to prevent or to discourage the perpetration of a threatened criminal act. The stop having been proper, the seizure of the sword-cane, which was in plain view, and the recovery of the knuckles were also proper. *Cf. State v. Hanawahine*, 50 Haw. 461, 443 P.2d 149 (1968); *State v. Goudy*, 52 Haw. 497, 479 P.2d 800 (1971).

II

The defendants also contend that before they could be convicted of the offense under the statute, it must first have been shown that the deadly and dangerous instruments were *concealed within the vehicle* in which they were riding. We disagree. The defendants were charged under HRS § 134-51 which provides as follows:

"Any person not authorized by law, *who carries concealed upon his person or within any vehicle used or occupied by him, or who is found armed with* any dirk, dagger, blackjack, slug shot, billy, metal knuckles, pistol, or other deadly or dangerous weapon, shall be fined not more than $250, or imprisoned not more than one year, or both." (Emphasis added)

While penal statutes must be construed in favor of the accused, *see State v. Rackle*, 55 Haw. 531, 523 P.2d 299 (1974), this rule may not be applied to defeat reasonable, manifest legislative purpose. In *United States v. Standard Oil Co.*, 384 U.S. 224, 225 (1966), the Supreme Court commented:

"But whatever may be said of the rule of strict construction, it cannot provide a substitute for common sense, precedent, and legislative history. We cannot construe [the statute] in a vacuum. Nor can we read it as Baron Parke would read a pleading."

And in *State v. Prevo*, 44 Haw. 665, 669, 361 P.2d 1044, 1047 (1961), this court said:

"Even the rule that penal statutes are to be strictly construed does not permit a court to ignore the legislative intent, nor does it require the rejection of that sense of the

words used which best harmonizes with the design of the statute or the end in view. . . . And the mere fact that the language of the penal statute is open to several constructions, one of which would sustain a conviction and the others an acquittal does not require that the interpretation be made in favor of freedom. The interpretation sustaining the conviction will be adopted if the court is satisfied that such was the sufficiently expressed intention of the legislature."

Statutory language must be read in the context of the entire statute, and the harm or evil it seeks to prevent must point the way to its construction. Where statutory language is ambiguous, yet capable of being fairly and reasonably construed, *State v. Prevo, supra,* the purpose and objective which moved the legislature to enact it may be determinative of its interpretation. *See United States v. National Dairy Products Corp.,* 372 U.S. 29 (1963). And even where there is no ambiguity, a departure from the literal application of statutory language will be justified if such literal application will lead to absurd consequences. *State v. Park,* 55 Haw. 610, 525 P.2d 586 (1974); *State v. Taylor,* 49 Haw. 624, 425 P.2d 1014 (1967).

HRS § 134-51 had its genesis in House Bill No. 24, which, as originally introduced, provided that "[a]ny person not authorized by law, *who shall carry, or be found armed with* any bowie-knife, pistol, or other deadly weapon, shall be [punished]." (Emphasis added)

The bill was subsequently amended to read that "[a]ny person not authorized by law, *who shall carry concealed upon his person or within any vehicle used or occupied by him, or who shall be found armed with,* any dirk, dagger, blackjack, slug shot, billy, metal knuckles, pistol, or other deadly or dangerous weapon, shall be guilty of a misdemeanor . . . ." (Emphasis added)

The legislature, however, in thus amending the bill, expressed no intention of deviating from its original purpose. In its committee report, it said:

"House Bill No. 24 makes it a specific misdemeanor *to be found with, or carrying, dangerous or deadly weapons*

*and anyone so offending may be charged and convicted of such offense* without the necessity of proving that the defendant has been guilty of continuing vagabondage.

The district magistrates of Honolulu, who administer laws of this character, have expressed themselves in favor of the enactment of this Bill, which we consider a meritorious measure.

The Bill, however, should in our opinion be amended *to strengthen its wording and to some degree enlarge its scope . . . .* " 1937 House Journal at 612. (Emphasis added)

It is not clear to us how the addition in the amended version of the words "concealed upon his person" after the word "carry" could have had the effect of strengthening the language or enlarging the scope of the statute. What is clear, however, is that the addition of the words "or within any vehicle used or occupied by him" did extend its reach.

The purpose of the *concealed* weapons statutes is probably best expressed in *People v. Raso,* 170 N.Y.S.2d 245, 251 (1958):

". . .The purpose of *all* concealment statutes is clear. At the time they were enacted, the open carrying of weapons upon the person, was not prohibited. The purpose of the concealed weapons statutes was to prevent men in sudden quarrel or in the commission of crime from drawing concealed weapons and using them without prior notice to their victims that they were armed. The person assailed or attacked would behave one way if he knew his assailant was armed and perhaps another way if he could safely presume that he was unarmed." (Emphasis in the original)

Obviously, this was not what the legislature had in mind when it enacted the statute under consideration. It intended to make it an offense to be found with or to carry deadly and dangerous weapons. *See* 1937 House Journal at 612. By expressly approving the purpose of the original bill, and by specifically making it an offense to be found armed with any of the weapons enumerated, the legislature thereby evinced its intent that concealment was not to be the determinative factor in the application of the statute. Certainly, a person

who carries a prohibited weapon upon his person, *whether concealed or unconcealed,* is a person "armed" within the meaning of the statute. *People v. Reaves,* 42 C.A.3d 852, 856, 117 Cal.Rptr. 163, 166 (1974).

But whatever may be said about the application, in a given case, of the word "concealed" upon a specific charge of carrying a weapon concealed upon the person, we are satisfied that the word "concealed" was not used to modify "within the vehicle" in the strict sense of precluding any violation if unconcealed deadly weapons were to be found within the vehicle. We think that if the legislature meant to limit the violations as such, it would have clearly and expressly so provided. Moreover, in holding as we do that the prohibited weapons need not be concealed within the vehicle, we are adopting a fair and reasonable construction which is clearly consistent with, and consummative of statutory purpose and legislative policy.

The statute is founded upon public policy having for its principal object the preservation of human life and the maintenance of public peace and good order in society. Public policy finds repulsive the practice or act of going and being ready for offense or defense, in case of conflict with another, with instruments ordinarily used for criminal and improper purposes. The legislature's purpose was to minimize the danger, accidental or otherwise, to public safety arising from free access to weapons that could be used for crimes of violence.

To adopt the construction urged upon us by the defendants would require us to read into the statute the word "concealed" immediately before the words "within any vehicle." This we are not prepared to do, for not only would such a construction be plainly at variance with the legislative purpose, but it would also invariably lead to absurd results. For example, under the interpretation urged upon us by the defendants, prohibited weapons lying exposed on the unoccupied back seat of a vehicle would not support a charge under the statute, while these same objects over which a newspaper had been thrown would supply a basis for the imposition of penal liability. Then again, we might have a

situation where weapons carried in the trunk of a vehicle would support a charge, but not where they were carried uncovered on the floor behind the driver's seat.

The defendants have relied very heavily upon *People v. Frost*, 125 Cal.App.(Supp.) 794, 12 P.2d 1096 (1932). Their reliance is misplaced. In *Frost*, the court held that a showing of concealment within the vehicle was required. Accordingly, it found the charge, which omitted an allegation of concealment, to be fatally defective. The California statute provided that "[e]xcept as otherwise provided in this act, it shall be unlawful for any person within this state to carry concealed upon his person or within any vehicle which is under his control or direction any pistol, revolver or other firearm capable of being concealed upon the person . . . ." It further provided that "[t]he unlawful concealed carrying upon the person or within the vehicle of the carrier of any . . . pistol, revolver, or other firearm capable of being concealed upon the person, is a nuisance." The emphasis upon concealment is clearly evident from a reading of the California statute. The placement of the word "concealed" *before* the word "carrying" so as to modify the latter was considered by the court to be determinative. The court said:

> "The word 'concealed' is so placed in this last quotation as to leave no doubt that it applies to carrying either upon the person or within the vehicle." 125 Cal.App.(Supp.) at 795, 12 P.2d at 1097.

The California court also considered significant that part of the title of the act expressing the legislative intent "to prohibit the carrying of concealed firearms except by lawfully authorized persons," and also the statutory exception that firearms "carried openly" in a certain manner "shall not be deemed to be concealed." Unlike the California statute, HRS § 134-51 may be violated by the carrying of deadly or dangerous weapons, *whether concealed or unconcealed.*

Affirmed.

*Dennis A. Daugherty (Stuart M. Cowan* with him on the briefs) for defendants-appellants.

*Stanley Young,* Deputy Prosecuting Attorney *(Reina A. Grant* on the brief) for plaintiff-appellee.