993 P.2d 580

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Jonathan RIVEIRA, Defendant–Appellant.**

**No. 21871.**

Intermediate Court of Appeals of Hawai'i.

Dec. 29, 1999.

Certiorari Granted Jan. 31, 2000.

Janet R. Garcia, Hilo, on the briefs, for Plaintiff-appellee.

Rose Anne Fletcher, Kaneohe, on the briefs, for defendant-appellant.

BURNS, C.J., ACOBA and LIM, JJ.

Opinion of the Court by LIM, J.

Defendant–Appellant Jonathan Riveira (Riveira) appeals the judgment of the District Court of the Third Circuit, entered May 14, 1998, convicting him of the offense of driving without no-fault insurance, in violation of Hawai'i Revised Statutes (HRS) § 431:10C–104(a) (Supp.1997), and sentencing him, as a repeat offender, to a $1500 fine.[1] For the following reasons, we affirm.

## I. BACKGROUND

On October 8, 1997, Riveira was cited for driving without no-fault insurance in violation of HRS § 431:10C–104(a).[2] On April 9, 1998,

1. 1997 Haw. Sess. laws, Act 251, §§ 14 and 27, effective January 1, 1998, substituted "motor vehicle insurance" for the term "no-fault" wherever the term appeared in Hawai'i Revised Statutes (HRS) §§ 431:10C–104 and 431:10C–117. Because Defendant–Appellant Jonathan Riveira (Riveira) was cited on October 8, 1997, before the effective date, we will use the term "no-fault" in this appeal.

2. On October 8, 1997, the relevant statutes provided:

§ 431:10C–104 Conditions of operation and registration of motor vehicles. (a) Except as provided in section 431:10C–105, no person shall operate or use a motor vehicle upon any public street, road or highway of this State at any time unless such motor vehicle is insured at all times under a [no-fault] policy.

. . . .

(c) Any person who violates the provisions of this section shall be subject to the provisions of section 431:10C–117(a).

. . . .

HRS § 431:10C–104 (Supp.1997)

§ 431:10C–117 Penalties.

(a) (1) Any person subject to this article in the capacity of the operator, owner, or registrant of a motor vehicle in this State, or registered in this State, who violates any applicable provision of this article, shall be subject to citation for the violation by any county police department in a form and manner approved by the violations bureau of the district court of the first circuit.

(2) Notwithstanding any provision of the Hawaii Penal Code:

(A) Each violation shall be deemed a separate offense and shall be subject to a fine of not less than $100 nor more than $5,000

he pled no contest to the charge. Previously, Riveira had been adjudicated for the same offense; on November 26, 1993, when he was seventeen years old.

The district court continued sentencing to May 14, 1998, to give the parties time to file sentencing memoranda.

Riveira filed a sentencing memorandum on May 11, 1998, contending that, because he was adjudicated as a juvenile for the previous offense, HRS § 571-1 prohibits consideration of the 1993 juvenile adjudication as a prior conviction for sentencing purposes.

The State filed a memorandum in support of sentencing as second conviction on May 12, 1998, arguing that, because *State v. Nobriga*, 56 Haw. 75, 527 P.2d 1269 (1974), allows the courts to consider juvenile records in sentencing adults, the 1993 juvenile adjudication should be treated as a prior conviction. The State also insisted that juveniles be treated the same as adults for traffic offenses.

When Riveira was cited, HRS § 431:10C-117(a)(2)(B) provided:

> If the person is convicted of not having had a [no-fault] policy in effect at the time

the citation was issued, the fine shall be $500 for the first offense and a minimum of $1,500 for each subsequent offense that occurs within a five-year period from any prior *conviction* [.]

(Emphasis added).

HRS § 571-1 provides, in relevant part:

> The chapter creates within this State a system of family courts and it shall be a policy and purpose of said courts to promote the reconciliation of distressed juveniles with their families, foster the rehabilitation of juveniles in difficulty, render appropriate punishment to offenders, and reduce juvenile delinquency. The court shall conduct all proceedings to the end that no adjudication by the court of the status of any child under this chapter shall be deemed a conviction; no such adjudication shall impose any civil disability ordinarily resulting from conviction; no child shall be found guilty or be deemed a criminal by reason of such adjudication; no child shall be charged with [a] crime or be convicted in any court except as otherwise provided in this chapter; and all children found responsible for offenses shall

> which shall not be suspended except as provided in subparagraph (B);
> (B) If the person is convicted of not having had a [no-fault] policy in effect at the time the citation was issued, the fine shall be $500 for the first offense and a minimum of $1,500 for each subsequent offense; that occurs within a five-year period from any prior conviction; provided that the judge:
> (i) Shall have the discretion to suspend the fine for the first offense; provided further that upon the defendant's request, the judge may grant community service in lieu of the fine, of not less than seventy-five hours and not more than one hundred hours for the first offense, and not less than two hundred hours nor more than two hundred seventy-five hours for the second offense; and
> (ii) May grant community service in lieu of the fine for subsequent offenses at the judge's discretion.
> (3) In addition to the fine in paragraph (2), for the first conviction within a five-year period for the offense of driving without [no-fault] policy, the court shall either:
> (A) Suspend the driver's license of the driver or of the registered owner for three months, provided that they shall not be required to obtain proof of financial responsibility pursuant to section 287-20; or

> (B) Require the driver or the registered owner to keep a nonrefundable [no-fault] policy in force for six months.
> In addition to the fine in paragraph (2), if the violation is a subsequent offense of driving without a valid [no-fault] policy, within a five-year period of any prior conviction, the driver's licenses [sic] of the driver or the registered owner shall be suspended for one year and the driver or the registered owner shall be required to maintain proof of financial responsibility pursuant to section 287-20.
> ....
> (5) In the case of multiple convictions for driving without a valid [no-fault] policy within a five-year period from any prior conviction, the court, in addition to any other penalty, shall impose the following penalties:
> (A) Imprisonment of not more than thirty days;
> (B) Suspension or revocation of the motor vehicle registration plates of the vehicle involved;
> (C) Impoundment, or impoundment and sale, of the motor vehicle for the costs of storage and other charges incident to seizure of the vehicle, or any other cost involved pursuant to section 431:10C-301; or
> (D) Any combination of those penalties.
> ....
> HRS § 431:10C-117 (Supp.1997).

receive dispositions that provide incentive for reform or deterrence from further misconduct, or both. The disposition made of a child or any evidence given in the court, shall not operate to disqualify the child in any civil service or military application or appointment. Any evidence given in any case under section 571–11 shall not in any civil, criminal, or other cause in any court be lawful or proper evidence against the child for any purpose whatever except in subsequent cases involving the same child under section 571–11.

At the May 14, 1998 sentencing, the district court, after hearing the arguments of the parties, deemed Riveira a repeat offender and sentenced him to a $1500 fine. Written findings of fact and conclusions of law were entered on July 27, 1998. Notice of appeal was filed by Riveira's counsel on August 27, 1998.

## II. JURISDICTION

■ Before we reach the merits of the appeal, we must determine that we have jurisdiction. The timely filing of a notice of appeal is a jurisdictional requirement. *State v. Knight*, 80 Hawai'i 318, 909 P.2d 1133 (1996). "It is well-settled that every court must ... determine as a threshold matter whether it has jurisdiction to decide the issue[s] presented. Moreover, subject matter jurisdiction may not be waived and can be challenged at any time." *Public Access Shoreline Hawaii v. Hawaii County Planning Comm'n*, 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995) (internal quotations and citations omitted). If neither side raises the issue, "a court *sua sponte* will, for unless jurisdiction of the court over the subject matter exists, any judgment rendered is invalid." *Meyer v. Territory*, 36 Haw. 75, 78 (1942).

### A.

*Whether the appellate court has jurisdiction even though Riveira's appeal was not timely filed?*

■ A notice of appeal must be filed within thirty days after entry of judgment. HRS § 641–12; Hawai'i Rules of Appellate Procedure (HRAP) 4(b). Judgment was entered on May 14, 1998, when the clerk noted the disposition on the court's daily calender.[3] The notice of appeal filed by Riveira on August 27, 1998 was, therefore, not timely.

However, if driving without no-fault insurance is a crime, as opposed to a mere violation, then Riveira's right to appeal may not be denied merely because his counsel failed to comply with procedural rules. *Knight*, 80 Hawai'i at 323–24, 909 P.2d at 1138–39 ("a criminal defendant is entitled, on his first appeal, to effective counsel who may not deprive him of his appeal by failure to comply with procedural rules.") *See also State v. Erwin*, 57 Haw. 268, 270, 554 P.2d 236, 238 (1976).

According to HRS § 701–107(1), "[a]n offense defined by this Code [Hawaii Penal Code] or by any other statute of this State for which a sentence of imprisonment is authorized constitutes a crime." (Emphasis added) For example, in *State v. Lau*, 78 Hawai'i 54, 59, 890 P.2d 291, 296 (1995), the Hawai'i Supreme Court held that driving under the influence of intoxicating liquor is a crime because a sentence of imprisonment is authorized by the statute. HRS § 291–4. A violation, on the other hand, does not carry a potential prison sentence, and is not considered a crime. *See* HRS § 701–107(5).

We question whether HRS § 701–107(1) applies in this case. Although HRS § 431:10C–117(a) authorizes imprisonment as punishment, it does so only for repeat offenders with multiple offenses.[4] Unlike the de-

---

3. "A judgment of conviction in the district court shall set forth the disposition of the proceedings and the same shall be entered on the record of the court. The notation of the judgment by the clerk on the calendar constitutes the entry of the judgment." Hawai'i Rules of Penal Procedure (HRPP) 32(c)(2). "A district court judgment consists of the clerk's notation on the court's daily calendar." *State v. Nishi*, 9 Haw.App. 516, 526, 852 P.2d 476, 481 (1993).

4. On October 8, 1997, HRS § 431:10C–117(a)(5) provided:

In the case of multiple convictions for driving without a valid [no-fault] policy within a five-year period from any prior conviction, the

fendants in *Lau,* who faced possible prison time even upon their first offenses, Riveira was not subject to incarceration.

■ However, offenses which do not carry the possibility of imprisonment can also be considered criminal. For example, improper mooring of vessel is a criminal offense, even though no prison sentence can be imposed. *State v. Simeona,* 10 Haw.App. 220, 229, 864 P.2d 1109, 1114 (1993), overruled on other grounds, *State v. Ford,* 84 Hawai'i 65, 929 P.2d 78 (1996). The controlling factor is whether the legislature intended to classify the penalties as criminal or civil. *Simeona,* 10 Haw.App. at 229–32, 864 P.2d at 1114–15.

Accordingly, a prosecution for driving without no-fault insurance is criminal in nature because the legislature intended the penalties to be criminal. The purpose of the no-fault insurance penalties is "[t]o deter persons from driving without motor vehicle insurance coverage not only through *criminal* penalties, but through a limitation on the ability of the uninsured motorist to recover for injuries in tort...." (Emphasis added) 1983 Haw. Sess. L. Act 245, § 1 at 510–21, cited in *Del Rio v. Crake,* 87 Hawai'i 297, 303, 955 P.2d 90,96 (1998). The *Del Rio* Court also noted that the legislature's several approaches to enforcing universal no-fault coverage extend to "[c]*riminal* penalties including fines, possible license suspension, jail, and impoundment of the vehicle[.]" (Emphasis added) *Id.* at 302, 955 P.2d at 95. Finally, the legislature has provided a specific criminal procedure statute for HRS § 431:10C violations. HRS § 805–13 (HRS Chapter 805 is entitled "Criminal Procedure: District Courts."). *See also State v. Shampp,* 86 Hawai'i 331, 334–39, 949 P.2d 171, 174–79 (describing a driving without no-fault insurance case as "a criminal case," and applying a criminal state-of-mind requirement to the material elements of the offense).

Therefore, although Riveira did not face a sentence of imprisonment, the proceeding was nevertheless criminal. As a criminal

court, in addition to any other penalty, shall impose the following penalties:
(A) Imprisonment of not more than thirty days;

defendant, Riveira is entitled to the present appeal.

### B.

*Whether Riveira's right to appeal an alleged illegal sentence was waived by his plea of no contest?*

■ The next jurisdictional issue is whether Riveira's right to appeal an alleged illegal sentence was waived by his plea of no contest.

■ Generally, a valid and unconditional plea of guilty or no contest constitutes a waiver of the right to appeal all nonjurisdictional claims. *State v. Morin,* 71 Haw. 159, 162, 785 P.2d 1316, 1318 (1990). The Hawai'i Supreme Court has identified the policy behind this general rule:

> "Once the defendant chooses to bypass the orderly procedure for litigating his constitutional claims in order to take the benefits, if any, of a plea of guilty, the State acquires a legitimate expectation of finality in the conviction thereby obtained."

*Id.* at 163, 785 P.2d at 1319 (quoting *Lefkowitz v. Newsome,* 420 U.S. 283, 289, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975)).

Allowing a defendant to appeal an illegal sentence after a plea of guilty or no contest does not conflict, however, with the policy behind *Morin.* An appeal pertaining to the legality of a sentence does not disturb finality in the conviction, no matter how the appeal is ultimately decided.

Furthermore, Hawai'i cases suggest that the right to appeal an illegal sentence is not waived by a plea of guilty or no contest. The Hawai'i Supreme Court has routinely reviewed appeals in which the defendant had pled guilty but was appealing an alleged illegal sentence. *See, e.g., Territory of Hawaii v. Maunakea,* 39 Haw. 249 (1952); *State v. Ferreira,* 59 Haw. 255, 580 P.2d 63 (1978); *State v. Jumila* 87 Hawai'i 1, 950 P.2d 1201 (1998). In none of these cases did the supreme court abjure jurisdiction because the

. . . .

defendant had entered a plea of guilty or no contest.

The procedural history of this case parallels that in *Jumila*. In *Jumila*, the defendant entered pleas of no contest to second degree murder and armed robbery charges. He then appealed his sentence. The supreme court confirmed Jumila's right to appeal, stating:

> [a]lthough Jumila entered pleas of no contest to the second degree murder ..., because he raised the HRS § 701–109 argument at his sentencing hearing, before judgment was entered, and because the prosecution has never contended that Jumila should be precluded from raising the argument, we conclude that Jumila did not waive his HRS § 701–109 rights when he entered his no contest pleas.

*Id.* at 3 n. 5, 950 P.2d at 1203 n. 5 (1998).

Similarly, Riveira raised the arguments presented in this appeal at the sentencing hearing, before judgment was entered, and the prosecution has never contended that Riveira should be precluded from raising the argument because of his no contest plea.

Some courts hold that a plea of guilty or no contest waives the right to appeal only those nonjurisdictional matters arising before the plea. *United States v. Floyd,* 108 F.3d 202, 204 (9th Cir.1997) ("[A]n unconditional guilty plea constitutes a waiver of the right to appeal all non-jurisdictional *antecedent* rulings and cures all *antecedent* constitutional defects.") (citations omitted) (emphases added); *United States v. Coffin,* 76 F.3d 494, 497 (2d Cir.1996)("[A] defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring *prior* to the entry of the guilty plea.") (emphasis added); *Grabowski v. Jackson County Public Defenders Office,* 47 F.3d 1386, 1390 (5th Cir.1995) ("[A] knowing and voluntary plea of guilty waives all *preceding* nonjurisdictional defects, ....") (citations omitted) (emphasis added).

Other courts explicitly hold that a plea of guilty or no contest does not waive the right to appeal matters that occur at the sentencing stage. *United States v. Cordero,* 42 F.3d 697, 699 (1st Cir.1994) (stating that "a defendant's unconditional guilty plea does not automatically waive the right to appeal matters incident to sentencing as opposed to guilt." (citation omitted)); *United States v. Attar,* 38 F.3d 727, 732–33 (4th Cir.1994) (holding that a guilty plea does not waive the right to object to a violation of the Sixth Amendment right to counsel at the sentencing stage); *United States v. Jacobson,* 15 F.3d 19, 23 (2d Cir.1994) (holding that a guilty plea does not automatically waive rights that occur at the sentencing stage.)

Still other courts focus the issue on the nature of the plea. "It is a constitutional requirement that a trial judge ensure that a guilty plea be voluntarily and knowingly entered." *State v. Dicks,* 57 Haw. 46, 49, 549 P.2d 727, 730 (1976) (citations omitted); *see also State v. Merino,* 81 Hawai'i 198, 915 P.2d 672 (1996). This being so, it is unreasonable to foreclose the right to appeal a sentence, for a defendant pleading guilty or no contest cannot possibly know then what will occur later, at the sentencing stage. *See United States v. Melancon,* 972 F.2d 566, 571 (5th Cir.1992) (Parker, Jr., concurring) (a defendant can never "knowingly and intelligently waive, as part of a plea agreement, the right to appeal a sentence that has yet to be imposed at the time he or she enters into the plea agreement; such a 'waiver' is inherently uninformed and unintelligent."); *United States v. Raynor,* 989 F.Supp. 43, 49 (D.C.1997) ("A defendant cannot knowingly, intelligently and voluntarily give up the right to appeal a sentence that has not yet been imposed and about which the defendant has no knowledge as to what will occur at the time of sentencing.")

For the reasons stated, we conclude this court does have jurisdiction to examine Riveira's appeal.

### III. QUESTION PRESENTED

■ The only issue on appeal is whether a defendant's juvenile adjudication for driving without no-fault insurance can be used to enhance the fine when he is convicted of the same offense as an adult.

Riveira notes that the enhanced fine for repeat offenders depends upon a previous

"conviction" for the same offense, and contends that, because no juvenile adjudication can be deemed a "conviction," he has no prior conviction and therefore cannot be sentenced as a repeat offender.

HRS § 431:10C–117(a)(2)(B) (Supp.1997) governed Riveira's sentencing:

> If the person is convicted of not having had a [no-fault] policy in effect at the time the citation was issued, the fine shall be $500 for the first offense and a minimum of $1,500 for each subsequent offense that occurs within a five-year period from any prior *conviction* [.]

(Emphasis added.) For the proposition that no juvenile adjudication can be deemed a "conviction" for purposes of HRS § 431:10C–117(a)(2)(B), Riveira cites HRS § 571–1, in pertinent part:

> The [family] court shall conduct all proceedings to the end that no adjudication by the court of the status of any child under this chapter shall be deemed a *conviction;* ... no child shall be found guilty or be deemed a criminal by reason of such adjudication; no child shall be charged with [a] crime or be convicted in any court except as otherwise provided in this chapter[.]

(Emphasis added.) [5]

The question on appeal is thus whether or not the term "conviction" in HRS § 431:10C–117(a)(2)(B) includes a juvenile adjudication for violating the same statute.

## IV.  STANDARD OF REVIEW

██ " 'The interpretation of a statute is a question of law reviewable de novo.' " *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (quoting *State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Aluli,* 78 Hawai'i 317, 320, 893 P.2d 168, 171 (1995).

## V.  DISCUSSION

### A.

██ The first step in statutory interpretation is "to give effect to the law according to its plain and obvious meaning." *State v. Rodrigues,* 68 Haw. 124, 129, 706 P.2d 1293, 1297 (1985). "[W]hen the language is plain and unmistakable, the court is bound by the plain, clear, and unambiguous language of the statute." *State v. Sylva,* 61 Haw. 385, 387–88, 605 P.2d 496, 498 (1980).

In this case, however, a simple and literal reading of the statute is impossible, because we are dealing with the often employed but rarely precisely defined term "conviction." *See State v. Akana,* 68 Haw. 164, 166, 706 P.2d 1300, 1303 (1985) ("[t]he meaning of the term 'convicted' or 'conviction' varies according to the context in which it appears and the purpose to which it relates.") For example, for the purpose of sentencing repeat offenders, HRS § 706–606.5, the term "conviction" consists of a finding of guilt by a jury or a court *and* a pronounced judgment. *See Rodrigues,* 68 Haw. 124, 706 P.2d 1293. For the purpose of revocation of probation, HRS § 706–628, however, the term "conviction" does not extend beyond the ascertainment of guilt or a guilty plea. *See Akana,* 68 Haw. at 167, 706 P.2d at 1303 (1985).

██ "When there is doubt, doubleness of meaning, or ... uncertainty of an expression used in a statute an ambiguity exists." *Sylva,* 61 Haw. at 388, 605 P.2d at 498. And when the statutory language is ambiguous, "the purpose and objective which moved the legislature to enact it may be determinative of its interpretation." *State v. Ogata,* 58 Haw. 514, 518, 572 P.2d 1222, 1225 (1977).

██ For legislative intent, we may turn to legislative history for guidance and clarification. *State v. Dannenberg,* 74 Haw. 75, 81, 837 P.2d 776, 779 (1992) ("In construing a statute, legislative history may be considered

---

5. Although Riveria's juvenile adjudication took place in district court under conveyed jurisdiction, the issue still rests upon the nature of juvenile adjudication in family court. The family court has conveyed jurisdiction over traffic violations to the district court under HRS § 571–41(f), which states that "[t]he exercise of jurisdiction over children by district courts shall, nevertheless, be considered noncriminal in procedure and result in the same manner as though the matter had been adjudicated and disposed of by a family court." *See also State v. Lapitan,* 69 Haw. 455, 456, 746 P.2d 82, 83 (1987).

when a statute is ambiguous or of doubtful meaning.")

### B.

The stated purpose of the no-fault insurance law is to:

(1) Create a system of reparations for accidental harm and loss arising from motor vehicle accidents;

(2) Compensate these damages without regard to fault; and

(3) Limit tort liability for these accidents.

*Del Rio,* 87 Hawai'i at 305, 955 P.2d at 98.

The legislature was convinced that "[t]he system of no-fault insurance ... can only be effective if all drivers participate to the extent required by law[,]" and was especially concerned about a chronic systemic problem, "the minority which consistently refuses to obtain the motor vehicle insurance coverage required under the law." *Id.* at 301–02, 955 P.2d at 95–96. To encourage universal coverage, the legislature demanded that:

> [t]hose uninsured drivers who try to obtain the *privilege of driving* a motor vehicle without the concomitant responsibility of an ability to compensate adequately those who are injured as a result of a motor vehicle accident *are to be dealt with more severely* in the criminal or civil areas than those who obtain the legally required no-fault insurance coverage[.]

*Id.* at 306, 955 P.2d at 99 (citing HRS § 431:10C–102(b)) (emphasis in the original).

One of the mechanisms the legislature designed to deter driving without the required coverage is stiffer penalties for repeat offenders. No-fault insurance law "provides mandatory imposition of additional penalties in the case of multiple offender[s] ... *the fine must be levied upon all offenders.*" Statement on Hse. Bill No.1986–80 to the 10th State Leg., 2d Sess., Feb. 11, 1980 at 3 (emphasis added).

No express exceptions were made regarding juvenile drivers. Indeed, the legislature repeatedly stated that *all* drivers must comply with the no-fault insurance law:

> The system of no-fault insurance ... can only be effective if *all drivers* participate to the extent required by law. This bill treats uninsured drivers more severely than those who obtain the legally required coverage within the specific legislative intent of encouraging participation by *all drivers* in the no-fault insurance system. Since the legislature has provided for persons economically unable to afford insurance under the public assistance provisions of the no-fault law, *there is no valid reason for persons not to have no-fault insurance.*

*Id.* at 301, 955 P.2d at 94 (quoting Sen. Stand. Comm. Rep. No. 830, in 1983 Senate Journal, at 1417) (emphasis added).

This being so, there is no indication the legislature intended to treat juvenile drivers differently from adult drivers for purposes of the no-fault insurance law; likewise, there is no indication the legislature intended to treat an adult defendant with a juvenile adjudication differently from any other offender. To do so would subvert the effectiveness of the legislative no-fault indemnity scheme.

"Statutes should be interpreted according to the intent, meaning, and purpose of the overall statutory scheme and not in a manner that would lead to absurd and unjust results." *Allstate Ins. Co. v. Hirose,* 77 Hawai'i 362, 371, 884 P.2d 1138, 1147 (1994).

To adopt Riveira's reasoning is to concede a series of absurdities. It would mean that a juvenile could be cited for driving without no-fault insurance any number of times, and that each and every time the juvenile must be considered a mere first-time offender. Under this scenario, the deterrent effect of stepladder sanctions is completely lost.

It would also mean that every person's first violation of the statute as an adult must be deemed a first offense, regardless of the person's history of violating the statute as a juvenile. This derogates the well-established rule that an adult defendant's juvenile record may be considered for purposes of sentencing. *Nobriga,* 56 Haw. at 75, 527 P.2d at 1269.

In *Nobriga,* the Hawai'i Supreme Court considered a young adult defendants' argument that the trial court erred in considering his juvenile record in sentencing him to a prison term. *Id.* at 76, 527 P.2d at 1270.

554

The defendant based his argument upon HRS § 571–84 (Supp.1973), the provision governing confidentiality of juvenile proceedings, and, most significantly upon HRS § 571–49, the former incarnation of the statute Riveira relies upon in this case, HRS § 571–1. *Id.*

In rejecting this argument, the supreme court noted that the purpose of HRS § 571–49 was to prohibit "the use of *evidence against* the child or minor involved in an *adversary* proceeding in any court other than family court, and not one of a blanket prohibition banning the use of juvenile records in a nonadversary proceeding, that is, at the sentencing stage." *Id.* at 79, 527 P.2d at 1272.

In doing so, the supreme court recognized that, "[t]o adopt appellant's reasoning on barring the use of juvenile records in the presentence report would in effect deny the sentencing judge access to relevant information necessary for the rendition of an informed sentencing decision, *Id.* at 81, 527 P.2d at 1273, and expressly grounded its holding on "the fundamental importance of informed judicial sentencing." *Id.* at 83, 527 P.2d at 1274.

Riveira's reasoning would fly directly in the face of the principle announced in *Nobriga*, that "[t]he judge is not required to operate in a vacuum." *Id.* at 84, 527 P.2d at 1275 (quoting *Berfield v. State*, at 458 P.2d 1008, 1011–12 (Alaska 1969)).

Finally, following Riveira's logic would lead to the ultimate absurdity. No juvenile could ever be subject to any fine for driving without no-fault insurance, because the $500 fine for a first offense is itself conditioned upon the person first being "convicted." HRS § 431:10C–117(2)(B) provides: "If the person is *convicted* of not having had a motor vehicle insurance policy in effect at the time the citation was issued, the fine shall be $500 for the first offense . . . ." (emphasis added). Riveira's strictly literal approach virtually immunizes juveniles against any significant penalties under Hawai'i's no-fault insurance law. It is unlikely that this was the legislature's intent, given what has already been said about the no-fault indemnity scheme. Even the protective provision of HRS § 571–

41(f), relied upon by Riveira, *supra*, n. 5, allows the imposition of fines upon juvenile traffic law violators. *State v. Lapitan*, 69 Haw. 455, 457 n. 3, 746 P.2d 82, 83 n. 3 (1987).

C.

This court is not unmindful of the fact that HRS § 571–1 protects an adult defendant from certain permanent consequences of his juvenile transgressions.

For example, pursuant to HRS §§ 853–4(6) and 853–4(8), a defendant with a prior felony conviction is statutorily disqualified from deferred acceptance of his guilty (DAG) plea. Pursuant to HRS § 571–1, however, an adult defendant's juvenile felony adjudication does not constitute such a disqualifying conviction. *See Sylva*, 61 Haw. 385, 605 P.2d 496.

*Sylva* is particularly germane to this case, because there the Hawai'i Supreme Court adopted a literal approach very similar to Riveira's, citing HRS § 571–1 in a footnote while peremptorily declaring that "subsections (6) and (8) do not apply because appellant has had no prior conviction." *Id.* at 387, 605 P.2d at 498 (footnote omitted).

Whether such a defendant's motion for a DAG plea is granted is, however, still within the discretion of the sentencing court. *Id.* at 389–90, 605 P.2d at 499. The court could still deny the motion, accept the plea and impose a more condign sentence. Indeed, in *Sylva* the supreme court affirmed the trial court's denial of Sylva's motion for a DAG based on Sylva's background, including over forty juvenile felony adjudications. *Id.* at 386, 390, 605 P.2d at 496, 499.

The supreme court explained,

If, as argued by the State, we were to follow the language of [HRS § 853–4(7)] literally, it would mean that every defendant with a juvenile record for offenses which would have been felonies if committed by an adult would be automatically disqualified from the benefits of DAG plea; it would simply make no difference if the defendant happens to have a juvenile record of a single offense incurred at age

twelve, and he is before the court with an unblemished adult record as a "one-time, accidental or situational offender." We do not believe that the legislature intended such palpably absurd consequences.

*Id.* at 389, 605 P.2d at 498–99.

Thus, in our view, *Sylva* stands for the limited proposition that the more lenient disposition not be categorically foreclosed. Seen in this light, *Sylva* joins *Nobriga* in fostering maximum informed flexibility in sentencing, as we do in this opinion. Riveira's position, which would categorically foreclose a more condign sanction, is simply the obverse of the position rejected in *Sylva* and, in the spirit of *Sylva* and *Nobriga*, should also be rejected.

The legislature designed the no-fault insurance law intending that its penalties be based upon the actual transgression, rather than the mere label given to its adjudication. The general bowdlerizing provisions of HRS § 571–1, relied upon by Riveira, should therefore be inapplicable to the specific penalty scheme here at issue.

It is doubtful that the legislature intended any special significance for the words it used to denote the prior adjudication. The legislature recently amended the statute by making "technical, nonsubstantive amendments for purposes of clarity and style," Sen. Comm. Rep. No. 2548, in 1998 Senate Journal, at 1035. One of these amendments changed the dispositive word from "conviction" to "offense." *See* HRS § 431:10C–117(a)(2)(B) (Supp.1998). Although the amendment became effective after Riveira was cited for his offense, the absence of any legislative comment on the change in terminology strongly suggests that the legislature never invested the word "conviction" with any significance more or less than the word "offense." [6]

Furthermore, in the provision for sentencing "of multiple offenders," the word "violations" was amended to "convictions" in 1996. *See* HRS § 431:10C–117(a)(4) (Supp.1996). The term was changed again in 1998, from "conviction" to "offense." *See* HRS § 431:10C–117(a)(5) (Supp.1998). These changes, too, were made without any legislative commentary or evident substantive effect. Such willy-nilly denotation negates any conception that the legislature had in mind anything like the convoluted interpretation Riveira espouses.

### D.

It follows from our holding in this case that juveniles can be sentenced as "multiple offenders" as well as repeat offenders under the no-fault insurance law. *See* HRS § 471:10C–117(A)(5). We do not mean to say that juveniles are now subject to imprisonment as "multiple offenders." That is explicitly prohibited by *State v. Buckman*, 70 Haw. 328, 770 P.2d 418 (1989). However, an appropriate disposition for repeat or multiple offenders does not necessarily entail imprisonment. The sentencing judge has a number of alternatives available in the statute to deter further noncompliance.

### VI. CONCLUSION

Based on the foregoing, the May 14, 1998 judgment should be affirmed.

Dissenting Opinion of ACOBA, J.

I respectfully dissent.

### I.

*State v. Sylva*, 61 Haw. 385, 605 P.2d 496 (1980), left no doubt that any adjudicated violation of a criminal law by a minor does not constitute a conviction for adult sentencing purposes.[1] More egregious circum-

---

**6.** " '[S]ubsequent history or amendments' may be examined in order to confirm our interpretation of statutory provisions." *Bowers v. Alamo Rent–A–Car, Inc.*, 88 Hawai'i 274, 282, 965 P.2d 1274, 1282 (1998) (Ramil, J., concurring)."

**1.** The majority maintains the term "conviction" varies according to its context. The two definitions found in the cases are the one "common[ly]" used and the one employed in a "tech-

nical" sense. "The word 'conviction' is more commonly used and understood to mean a verdict of guilty or a plea of guilty. The more technical definition includes the judgment or sentence rendered pursuant to an ascertainment of guilt." *State v. Akana*, 68 Haw. 164, 167, 706 P.2d 1300, 1303 (1985) (citations omitted). Conviction is commonly referred to as "the finding of the jury [or the court] that the defendant is guilty. In a more technical sense, however, it

stances existed in *Sylva* than those in the present case. There the defendant had no adult criminal record but had been adjudicated a juvenile law violator in forty-two "offenses and had been committed to Koolau Boys Home." *Id.* at 386, 605 P.2d at 497. In holding that the trial court had erred in "statutorily disqualifying the adult defendant [from] a [deferred acceptance of guilty (DAG)] plea because of his juvenile record," *id.*, the supreme court dismissed out of hand the proposition that family court adjudications could be considered "convictions." The DAG plea statutory provisions involved were Hawai'i Revised Statutes (HRS) § 853–4(6), (7), and (8) (1976 Repl.), which stated as follows:

(6) *The defendant has been convicted of any offense defined as a felony by the [Hawai'i] Penal Code* or has been convicted for any conduct which if perpetrated in this state would be punishable as a felony;

(7) *The defendant is found to be a law violator or delinquent child for the commission of an offense defined as a felony by the [Hawai'i] Penal Code* or for any conduct which if perpetrated in this state would constitute a felony;

(8) *The defendant has a prior conviction for a felony* committed in any state, federal, or foreign jurisdiction.

*Id.* at 387, 605 P.2d at 497–98 (emphases added). The supreme court concluded that "subsections (6) and (8) do not apply [to disqualify the defendant] because [he] *has had no prior conviction.*" *Id.*, 605 P.2d at 498 (footnote omitted). In explaining this conclusion, the supreme court cited section 571–1 of HRS chapter 571 which pertains to the family courts, and quoted it as follows:

This [HRS] chapter [571] creates within this State a system of family courts and it shall be a *policy and purpose of said courts to conduct all proceedings to the end that no adjudication by the court of the status of any child under this chapter shall be deemed a conviction;* . . . .

*Id.* at 387 n. 1, 605 P.2d at 498 n. 1 (emphasis added). Thus, nothing could be more explicit

under the mandatory language of HRS § 571–1 (1993) and as applied by the supreme court in *Sylva* than the fact that no juvenile adjudication by the family court shall be considered a conviction.

The paramount effect of HRS § 571–1 was implicitly confirmed in the supreme court's construction of subsection (7). On its face, that section appeared to disqualify from DAG plea consideration, any adult defendant who had engaged in felonious conduct while a juvenile. However, the supreme court rejected the State's position that "subsection (7) disqualifies [the defendant] from the benefit of a DAG plea because his juvenile record consisted of offenses which would have been felonies if committed by an adult." *Id.* at 387, 605 P.2d at 498. Reading subsection (7) "in context of subsections (6) and (8) and the purposes of [HRS c]hapter 853," *Id.* at 388, 605 P.2d at 498, the supreme court limited subsection (7) "to only those cases involving minors [who] . . . were waived from the family courts to the criminal courts to be *tried as adults* pursuant to HRS § 571–22." *Id.* at 389, 605 P.2d at 499 (emphasis added). Thus, under the rationale adopted by the supreme court, juvenile adjudications in the family court were not a basis for disqualifying adult eligibility for DAG pleas. The limited exception allowed by the supreme court in subsection (7) applied only when the minor's status was legally converted to adult status under a waiver proceeding. *See In re Doe,* 57 Haw. 413, 414 n. 1, 558 P.2d 483, 484 n. 1 (1976) (stating that a "waiver proceeding does not involve adjudication, or even consideration, of guilt or innocence of the accused, and a waiver order is not the functional equivalent of a sentence or order of probation by a criminal court").

That the noncriminal nature of proceedings against minors is inviolate even where concurrent jurisdiction over juvenile law violations is conferred on the district court was confirmed in *State v. Buckman,* 70 Haw. 328, 770 P.2d 418 (1989). There, the defendant was arrested for two traffic offenses, driving without a license and driving while intoxicated, when she was a juvenile. *Id.* at 328, 770

means a final judgment entered on such a determination." *State v. Rodrigues,* 68 Haw. 124, 129, 706 P.2d 1293, 1298 (1985) (internal quotation marks and citations omitted; brackets in

original). Neither definition would fit the circumstance of a juvenile adjudication. *See* discussion *infra.*

P.2d at 418. The district court which had concurrent jurisdiction of the case under HRS § 571–41(f) sentenced the defendant, who had turned eighteen years of age and therefore was of adult age, to thirty days in jail for driving without a license. *Id.* at 329, 770 P.2d at 419.

The supreme court reversed the sentence because "the district court ... acted outside the limits of its concurrent jurisdiction in sentencing [the defendant] to serve a jail sentence for a traffic offense committed while she was still a minor." *Id.* at 331, 770 P.2d at 420. It reasoned that under HRS § 571–41(f), "[t]he exercise of jurisdiction over children by [the] district cour[t] shall ... be considered noncriminal in procedure and result in the same manner as though the matter had been adjudicated and disposed of by a family court." *Id.* The supreme court observed that

> [t]he noncriminal nature of family court proceedings accords with "the philosophy and approach of this specialized court [which] is based upon the principle that the state has a responsibility to protect ... children [.]" Hse. Stand. Comm. Rep. No. 130, in 1965 House Journal, at 550. To allow the district court to impose a sentence of imprisonment upon a minor would be contrary to this philosophy and violative of HRS § 571–41(f).

*Id.* at 331, 770 P.2d at 420 (emphasis added). *See also In re Doe,* 86 Hawai'i 517, 521–22, 950 P.2d 701, 705–06 (App.1997) (holding that family court had no jurisdiction to sentence the defendant to an adult correctional facility because defendant was a juvenile at the time of the offense and an adjudicated law violator may be transferred to an adult facility only if he or she disrupts the order of a youth correctional facility as provided under HRS § 352–28 (1993)).

The foregoing rebuts the majority's conclusion that the position of Defendant–Appellant Jonathan Riveira (Defendant) "is simply the obverse of the position rejected in *Sylva,*" 92 Hawai'i at 555, 993 P.2d at 589; *Sylva* in fact affirmed the plain language of HRS § 571–1 which prohibits treating juvenile adjudications as convictions. *Buckman* similarly reaffirmed the noncriminal nature of juvenile proceedings.

## II.

It is necessary to establish that the issue here is not one of maximizing access to sentencing information as the majority poses it. Therefore, I regard *Sylva* as standing for more than "the limited proposition that the more lenient disposition not be categorically foreclosed" as the majority contends. That proposition obfuscates the distinction between judicial authority to impose a sentence and judicial discretion to choose from among various sentencing alternatives.

In *Sylva,* the supreme court concluded that as a matter of law, the statutory language in subsections (6), (7), and (8) deprived the trial court of any discretion to treat juvenile adjucations as a disqualifying factor. *Sylva,* 61 Haw. at 387–89, 605 P.2d at 498–99. That point was distinguished from the trial court's discretion to consider "all kinds of factors ... past record, age of defendant," *id.* at 386, 605 P.2d at 497, in determining whether to "deny or accept DAG pleas," the exercise of which was subject to review only for abuse. *Id.* at 390, 605 P.2d at 499.

*State v. Nobriga,* 56 Haw. 75, 527 P.2d 1269 (1974), was no different. There, it was said that " 'sufficient and accurate information' " was " 'necessary' " for the sentencing court " '[i]n any system which vests discretion in the sentencing authority ... so that it may rationally exercise its discretion.' " *Id.* at 81, 527 P.2d at 1273 (quoting commentary, Hawai'i Penal Code § 601 (Proposed Draft), Judicial Council of Hawai'i (1970)) (emphasis added).

I have no quarrel with this principle.

However, the question here is not one involving the exercise of sentencing discretion, but is purely one of statutory construction because it must be determined whether Defendant was legally amenable to the sentence imposed in the first place. An examination of the no-fault insurance statutes involved demonstrate quite clearly that we are faced with a question of legal interpretation, not sentencing discretion.

## III.

In pertinent part, the relevant no-fault statutes state as follows:

**Conditions and operation and registration of motor vehicles.** (a) . . . no person shall operate or use a motor vehicle upon any public street, road or highway of this State at any time unless such motor vehicle is insured at all times under a motor vehicle insurance policy.

HRS § 431:10C–104 (Supp.1997).

**Penalties.** (a)(1) Any person . . . in the capacity of the operator . . . of a motor vehicle . . ., who violates any applicable provision of this article, shall be subject to citation. . . .

(2) Notwithstanding any provision of the Hawai'i Penal Code:

. . . .

(B) If the person is *convicted* of not having had a motor vehicle insurance policy in effect at the time the citation was issued, the fine shall be $500 for the first offense and a minimum of $1500 *for each subsequent offense that occurs within a five-year period from any prior conviction;* provided that the judge:

(i) Shall have the discretion to suspend the fine . . ., grant community service in lieu of the fine, . . . for the first offense, . . . and . . . for the second offense; and

(ii) May grant community service in lieu of the fine for subsequent offenses. . . .[2]

HRS § 431:10C–117 (Supp.1997) (emphases added).

Plainly, before imposing sentence under HRS § 431:10C–117(2)(b), the court must first determine a factual issue (which in this appeal is also raised as a legal one): whether

there was a conviction either in a "first offense" or "any prior conviction" in the event of subsequent offenses. If it is determined, legally and factually, that there was a conviction, then the statute vests the court with the sentencing discretion envisioned in *Nobriga.* Such discretion would entail selecting from the menu of options set forth in 431:10C–117(2)(B)(i) and (ii)—whether the fine should exceed $1500,[3] should be suspended, or should be converted into community service. *Cf. Nobriga,* 56 Haw. at 77, 527 P.2d at 1271 (stating that in the sentencing process "the presiding judge is no longer dealing with the process of determining factual issues, . . . but rather must concern himself [or herself] with imposing a fair, proper and just sentence").

It is at the point at which the court determines as a matter of law and fact that there was a conviction and not before, that "the well established rule that an adult defendant's juvenile record may be considered for purposes of sentencing," 92 Hawai'i at 553, 993 P.2d at 587, becomes relevant. Access to the juvenile history of Defendant hence does nothing to resolve the legal question of whether a juvenile adjudication, in light of express language in HRS § 571-1, can be treated as a conviction for adult sentencing purposes under HRS § 431:10C–117(2)(b). Thus, the majority's rail against a "person's first violation . . . as an adult . . . be[ing] deemed a first offense, regardless of the person's history of violat[ions] . . . as a juvenile[,]" does nothing to advance my analyses. As was illustrated in *Sylva,* the number of prior law violations committed by a juvenile does not dictate whether the courts should pronounce the resulting adjudications convic-

---

**2.** Hawai'i Revised Statutes (HRS) § 431:10C–117 (Supp.1997) further states, in part:

(3) In addition to the fine in paragraph (2), *for the first conviction* within a five-year period . . ., the court shall either
(A) Suspend the driver's license of the driver or of the registered owner . . .; or
(B) Require the driver or the registered owner to keep a nonrefundable insurance policy in force for six months.
In addition to the fine in paragraph (2), if the violation is a subsequent offense of driving without a valid insurance policy, within a five-year period of any *prior conviction,* the driver's licenses of the driver or the registered owner shall be suspended for one year. . . .

. . . .

(5) In the case of multiple *convictions* for driving without a valid motor vehicle insurance policy within a five-year period from any *prior conviction,* the court, in addition to any other penalty, shall impose . . . :
(A) Imprisonment of not more than thirty days;
(B) Suspension or revocation of the motor vehicle registration plates . . .;
(C) Impoundment, or impoundment and sale, of the motor vehicle . . .; or
(D) Any combination of those penalties.
(Emphases added.)

**3.** I express no opinion on the validity of this provision.

tions. It is after all the law which we must construe and apply.

## IV.

Under the reasoning adopted by the majority, a juvenile adjudication must be treated as a criminal conviction. In my opinion, this is not only violative of the provisions in HRS chapter 571 (1993) but a rejection of the juvenile family court system altogether.

The public purpose and policy of HRS chapter 571, which we are bound to apply, affirms in concise and lucid terms the non-criminal nature of family court proceedings involving minors:

> The chapter creates within this State a system of family courts.... *The court shall conduct all proceedings to the end that no adjudication by the court of the status of any child under this chapter shall be deemed a conviction;* no such adjudication shall impose any civil disability ordinarily resulting from conviction; *no child shall be found guilty or be deemed a criminal by reason of such adjudication; no child shall be charged with [a] crime or be convicted in any court except as otherwise provided in this chapter;* and all children found responsible for offenses shall receive dispositions that provide incentive for reform or deterrence from further misconduct, or both.... *Any evidence given in any case under section 571–11 shall not in any civil, criminal, or other cause in any court be lawful or proper evidence against the child for any purpose whatever [sic] except in subsequent cases involving the same child under section 571–11.*

HRS § 571–1 (emphases added). HRS § 571–11(1) states, in part:

> Except as otherwise provided in this chapter, *the court shall have exclusive original jurisdiction in proceedings:*
>
> (1) *Concerning any person who is alleged to have committed an act* prior to achieving eighteen years of age which would constitute a violation or attempted violation *of any* federal,

*state,* or local *law* or municipal ordinance....

(Emphases added.) Without qualification, then, HRS § 571–1 directs that "no adjudication by the [family] court of the status of any child under th[is] chapter [571] shall be deemed a conviction." Correspondingly, HRS § 571–1 also mandates that "no child shall be found guilty or be deemed a criminal by reason of such adjudication." Accordingly, any juvenile adjudication, including that for a no-fault insurance violation, by definition, is not a conviction.

In addition to the foregoing precepts, HRS § 571–1 instructs that any evidence used in law violation proceedings "shall not in any ... criminal ... cause in any event be lawful or proper evidence against the child for any purpose whatever [sic] except in subsequent cases involving the same child under section 571–11." The plain import of this provision is that any evidence of no-fault insurance violations may only be used as evidence in subsequent family court proceedings. Evidence of such violations, therefore, cannot be offered as evidence "for any purpose whatever [sic]" in any court.

## V.

The majority's decision rests simply on the *absence* of language excluding juveniles from the penalty provisions of HRS § 431:10C–117(a)(2)(B). Majority opinion at 553, 993 P.2d at 587. But in this sense, HRS § 431:10C–117(a)(2)(B) is no different from innumerable other criminal statutes which lack an exclusionary clause for juvenile adjudications. Under the HRS chapter 571 scheme adopted for juvenile proceedings, express exclusions are not required in the various other statutes because the subject of juvenile adjudications is expressly governed by the terms of general applicability employed in HRS § 571–1. Therefore, it is not the absence of exclusionary language that would subject juvenile adjudications to the same standard as adult convictions, but rather, the *presence* of express language to that effect which would require us to construe

HRS § 431:10C–117 as an exception to the convictions prohibition in HRS § 571–1.[4]

## VI.

Because HRS chapter 571 announces the State's policy on juvenile adjudications, in the absence of any specific language in a statute to the contrary, the provisions in that chapter should control any questions as to their treatment. There is no reference to HRS chapter 571 in HRS § 431:10C–117(a)(2). There is nothing in the no-fault statute which expresses any intent to carve out an exception to the policy set forth in HRS § 571–1. We may assume the legislature is cognizant of HRS chapter 571, and if it had intended to exclude juvenile adjudications in no-fault insurance cases from the provisions of HRS § 571–1, it would have explicitly said so. *Marsland v. Pang*, 5 Haw.App. 463, 485, 701 P.2d 175, 192, *cert. denied*, 67 Haw. 686, 744 P.2d 781 (1985) (stating "we must ... assume that the legislature was aware of the state of the law ... at [the time it legislated]"); *see Keliipulcole v. Wilson*, 85 Hawai'i 217, 225, 941 P.2d 300, 308 (1997) (stating that in a declaratory judgment and injunctive relief action, "[p]resumably the legislature was aware of the status of the law and the policies of the [agency], yet declined to amend the statute").

Under the logic employed by the majority, every criminal sentencing statute can be similarly construed, absent specific language which would unnecessarily reiterate what is already set forth in HRS § 571–1. I see no basis for inferring, as the majority does, that the *lack* of exclusionary language evidences a legislative intent to override the plain pronouncement in HRS § 571–1 against treating juvenile adjudications as convictions.

## VII.

It only remains to consider the majority's collateral contentions.

### A.

The majority challenges what is not challenged by Defendant. It is not questioned that juvenile drivers are subject, like adult drivers, to no-fault insurance requirements, as it is not challenged that juveniles are subject to the same proscriptions against criminal conduct that restrict adults. But as with the violation of other criminal statutes, a juvenile's violation of the no-fault insurance requirement is by virtue of HRS § 571–1, treated as non-criminal in nature. In that regard, sanctions are imposed by the family court including those aimed at "deterrence from further misconduct." HRS § 571–1.

### B.

There are no facts in the record to support the majority's speculation that following the dictates of HRS § 571–1 would mean "the deterrent effect of stepladder sanctions is completely lost[ ]" upon an *adult*. 92 Hawai'i at 553, 993 P.2d at 587. But more fundamentally, the majority's contention that HRS § 571–1 "virtually immunizes juveniles against any significant penalties under [the] no-fault insurance law[,]" 92 Hawai'i at 554, 993 P.2d at 588, begs again the question of whether a juvenile adjudication is intended to be treated as a conviction. As in other criminal cases, juveniles are not subjected to the same "penalties" as are adults because where minors are involved, HRS § 571–1 governs. The relevant standard in such cases, therefore, is not "stepladder sanctions," but the prescription that "all children found responsible for offenses shall receive dispositions that provide incentive for reform or deterrence

4. For example, in HRS § 325–16.5 (1993) pertaining to HIV testing of sexual assault offenders, the legislature specifically included a minor adjudicated a law violator in the definition of "convicted person." Such a person is described as "a person who has been convicted of an offense under sections 707–730, 707–731, or 707–732(1)(a), *including a juvenile adjudicated of such an offense.* A person is convicted when a verdict or *adjudication has been rendered by a judge* or jury, or a plea of guilty or nolo contendere has been accepted by the court." (Emphases added.) Further, HRS § 325–16(7) (1993) reiterated expressly that a court order for HIV testing would include a minor law violator; "[a] person who has been convicted, or *a juvenile who has been adjudicated*, pursuant to sections 707–730, 707–731, or 707–732(1)(a) shall be tested to determine the person's HIV status[.]" (Emphasis added.)

from further misconduct or both." HRS § 571–1.

### C.

The majority denigrates Defendant's legal arguments as "a series of absurdities." *See* 92 Hawai'i at 553, 993 P.2d at 587. In what it labels as the "ultimate absurdity," the majority postulates that "[n]o juvenile could ever be subject to any fine ... because the ... fine for a first offense is itself conditioned upon the person first being 'convicted.'" 92 Hawai'i at 554, 993 P.2d at 588. This statement assumes the answer to the question at hand. Assuredly no minor could be subjected to HRS § 431:10C–117 because by virtue of HRS § 571–1, a minor's violation does not result in conviction; one can find fault with this proposition only if he or she is already committed to the unstated assumption that minors should be subjected to the same sanctions as adults.

### VIII.

Finally, the majority seeks refuge in subsequent legislative history, inferring that since the term "conviction" in HRS § 431:10C–117(a)(2)(B) was later replaced by the word "offense" in the context of "technical, nonsubstantive" amendments, the word "conviction" had no "significance more or less" than "offense." 92 Hawai'i at 555, 993 P.2d at 589. But accepting this premise can mean nothing more than that the term "offense" must reasonably be construed to mean

"conviction." [5] Nevertheless, the majority asserts that "such willy-nilly denotation" by the legislature "negates" Defendant's position. *Id.*

The majority's laborious effort to revise the plain effect of the word "conviction" belies the suggestion that so little should be made of it. More importantly, however, due respect must be accorded the effect of words used by the legislature, even if their true significance is not imparted in legislative committee reports. In context, a purportedly technical change may in fact result in altering the substantive impact of a statute. When faced with interpreting statutes, the courts must be vigilant of the consequences statutes work, whether declared by the legislature or not. It is how the statute would be read by the layperson which guides our construction in criminal cases, and in that regard nothing could be plainer than the fact that a juvenile adjudication is not a conviction.

### IX.

For the foregoing reasons, I would vacate the judgment of conviction and remand the case for resentencing.

---

**5.** While the issue is not presented to us directly, any other interpretation would implicate significant due process concerns.